NESENOFF & MILTENBERG, LLP.
ANDREW T. MILTENBERG (NY State Bar
No. 2399582; *pro hac vice pending*)
amiltenberg@nmllplaw.com
STUART BERNSTEIN (NY State Bar
No. 2371953; *pro hac vice pending*)
sbernstein@nmllplaw.com
GABRIELLE VINCI (NY State Bar
No.: 5309273; *pro hac vice pending)*
363 Seventh Avenue, 5th Floor
New York, New York 10001-3904
Telephone: (212) 736-4500
Facsimile: (212) 736-2260

SUSAN STARK, SBN 147283
sstark@nmllplaw.com
4 Palo Alto Square
3000 El Camino Real, Suite 200
Palo Alto, California 94306

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| E.H., a minor by and through her guardian *ad litem* SONYA HERRERA<br><br>                Plaintiff,<br><br>    v.<br><br>VALLEY CHRISTIAN ACADEMY, FIRST BAPTIST CHURCH, JOEL MIKKELSON, and DOES 1-30,<br><br>            Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>1) **Title IX (Sex Discrimination/Hostile Environment)**<br>2) **Violation of Equal Protection Clause, 42 U.S.C. Section 1983**<br>3) **Violation of California Education Code Section 200** *et seq.*<br>4) **Violation of Unruh Civil Rights Act**<br>5) **Intentional Infliction of Emotional Distress**<br><br>**JURY TRIAL DEMAND** |

Plaintiff E.H., a minor ("Plaintiff") by and through her guardian *ad litem* Sonya Herrera, and

by her attorneys Nesenoff & Miltenberg, LLP and local counsel Palay Hefelfinger APC, as and for

her Complaint against Defendants Valley Christian Academy ("Defendant Valley Christian"), First Baptist Church ("Defendant First Baptist") and Joel Mikkelson ("Defendant Mikkelson"), together, collectively referred to as ("Defendants") alleges as follows:

## THE NATURE OF THE ACTION

1.    This action arises out of the abhorrent, intentional, and gross discrimination against Plaintiff, a female student athlete enrolled at Cuyama Valley High School ("Cuyama Valley"), by Defendants' antiquated, misogynistic ideals and policies through which Defendants sought to minimize Plaintiff's athletic ability and deprive her of athletic opportunities strictly due to her gender.

2.    Plaintiff has been a competitive athlete from a young age, often out-performing males in male-dominated sports.

3.    Pursuant to district policies, Plaintiff sought to join, and indeed did make the roster for, Cuyama Valley's Varsity football team as one of two wide receivers on the team.

4.    Plaintiff served an integral role on the team and proved the fierce competitor she had been her entire life, shocking spectators and her team alike, and breaking the mold of what was once thought of as a male-only sport.

5.    While there has been national praise for women being bold, talented, and strong enough to break into male-dominated sports, Defendants not only lacked the same support and enthusiasm, but publicly denounced, ridiculed, intentionally and maliciously targeted Plaintiff as a female athlete, and openly discriminated against her for daring to play football against Defendant Valley Christian's all-male team.

6.    Indeed, Defendant Valley Christian gawked at Plaintiff in disgust as if she were some kind of spectacle and went as far as to change its whole football schedule due to the fact that they *refused* to even compete against Cuyama Valley solely because Plaintiff, a female, was a member of the team.

7.    Incredibly, Defendants then sought to justify their blatant discrimination by quoting their Biblical principals to "protect" women, which, ironically, are the same Biblical principals that call for equality amongst all individuals.

8.      In reality, Defendants were merely undermining Plaintiff's athletic ability and stating that she was not capable of playing at a man's level, thereby painting Plaintiff as a weak, inadequate, and entirely helpless creature strictly because of her gender, and publicly humiliated her in the process.

9.      As a result of Defendants' refusal to compete against Cuyama Valley while Plaintiff was a participant on the team, Defendants deprived Plaintiff of educational opportunities which are readily available to similarly situated males. Plaintiff was not able to compete at the same level or in the same conference games as she would have been able to but for her gender.

10.     Accordingly, based on the foregoing and as alleged herein, Plaintiff brings this action for damages against Defendants for (i) violations of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et seq*. ("Title IX"); (ii) violations of Plaintiff's constitutional rights vis-à-vis 42 U.S.C. § 1983; and (iii) violations of the California State's Education Code §§ 200 *et. seq.* and Civil Code § 51 *et. seq*.

**JURISDICTION AND VENUE**

11.     This Court's federal and supplemental jurisdiction is invoked pursuant to 28 U.S.C § 1331 (federal question jurisdiction), 28 U.S.C § 1343(a)(3) (federal civil rights jurisdiction), 42 U.S.C § 1983, and 20 U.S.C § 1681 *et seq*. (Title IX of the  Educational Amendments of 1972) and 28 U.S.C § 1367 because: (i) the case arises under the law of the United States; (ii) the claims brought under Title IX of the Educational Amendments of 1972, 42 U.S.C § 1983 and 20 U.S.C § 1681 are civil rights claims; and (iii) the state law claims are so closely related to the federal law claims as to form the same case and controversy under Article III of the U.S. Constitution.

12.     This Court has personal jurisdiction over Defendant Valley Christian because it is located in and conducts business within the State of California.

13.     This Court has personal jurisdiction over Defendant First Baptist because it is located in and conducts business within the State of California.

14.     This Court has personal jurisdiction over Defendant Mikkelson on the grounds that he is a resident of the State of California, was employed by Defendant Valley Christian and Defendant First Baptist as school Superintendent.

15. At all relevant times herein, Defendant Mikkelson was acting as an agent on behalf of Defendant Valley Christian and Defendant First Baptist in committing the wrongful acts as alleged herein.

16. Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## INTRADISTRICT ASSIGNMENT

17. This case arose in Santa Barbara County, California, and pursuant to the Local Rules of the United States District Court, Central District of California, should be assigned to the Santa Barbara (Western) Division of the Central District Court.

## PARTIES

18. Plaintiff is a resident of the County of Santa Barbara, California. Plaintiff is fifteen years old as of the time of the filing of this Complaint; she brings this action by and through her mother and guardian *ad litem*, Sonya Herrera.

19. Defendant First Baptist is an independent Baptist Church located at 2970 Santa Maria Way in Santa Maria, California.

20. Defendant First Baptist's educational mission as reflected on its website is to "encourage students to develop a heart for God and a biblical worldview, preparing them to positively impact their families, churches and country for Christ".

21. Defendant First Baptist identifies itself on its website as "home of Valley Christian Academy K-12".

22. Defendant Valley Christian is a private, religious pre-K through 12th grade school that operates under the auspices and direction of Defendant First Baptist, with both entities sharing the same physical location of 2970 Santa Maria Way in Santa Maria, California.

23. Defendant Valley Christian is an "educational ministry" of Defendant First Baptist.

24. Defendant Valley Christian operates and exists, as promulgated in its Parent/Student Handbook, "in accordance with the teachings of Scripture" meaning, among other things, that "Valley Christian believes that the Bible prohibits immorality of any type" and that "boys are not permitted to wear typical girls' clothing or vice versa."  (Handbook, p. 30).

25.     During the relevant time of the acts alleged herein, Defendant Mikkelson was, and on information and belief is, the Lead Pastor of Defendant First Baptist and Superintendent of School of Defendant Valley Christian.

26.     All actions alleged herein against Defendant Mikkelson were taken in the course and scope of his employment with Defendant First Baptist and Defendant Valley Christian.

27.     At all relevant times, as alleged more fully herein, each Defendant acted as an agent, servant, employee, alter-ego and joint actor of the other Defendants and in doing the things alleged herein acted within the course and scope of such agency, employment and in furtherance of their joint actions.  Each of the Defendant's acts as alleged herein was done with the permission and consent of each of the other Defendants.

28.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants Does 1 - 30, are unknown to Plaintiff who therefore sues said defendants by such fictitious names and will ask leave of Court to amend this complaint when the true names and capacities have been ascertained.  Plaintiff is informed and believes, and thereon alleges on such information and belief, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged which actions or inactions proximately caused Plaintiff's injuries as herein alleged.  Plaintiff is uncertain as to the manner or function of said defendants, and Plaintiff prays leave to amend this complaint to insert true names, capacities, functions, occupations, and businesses of said defendants when the same are ascertained.

## FACTUAL ALLEGATIONS OF THE CASE

I.     **Women Prove Their Physical Capabilities in Traditionally Male-Dominated Sports, Despite Sociological Barriers**

29.     In recent years, female interest in participating in sports that had long been thought of as exclusively male sports has grown exponentially.

30.     Indeed, according to *Global Sport Matter*, a multimedia platform created to cultivate informed discourse around sports, there is level of competition in traditional male-dominated sports in which females want, if given the opportunity, to participate. If a "girl is interested in play[ing] on

a boys' team –the option needs to be provided for them to participate." *See* "*More Female Athletes Take on Male-Only Sports*" (January 17, 2020).

31.    The *Women's Sports Foundation* has confirmed that the growth of women participating in all-male teams has "grown exponentially" in the past 10-years, specifically with girls playing on once exclusively male football teams.

32.    Many organizations and sports-focused entities, including schools across the nation, have acknowledged the growing interest of female athletes in competing in stereotypically male-dominated sports, and have made impressive strides integrating female players onto once all-male sports teams.

33.    Women have also been infiltrating the National Football League, as there are currently eight coaches and twelve scouts that are female. *See* Timothy Wahl, *Women's interest and participation in football growing sharply*, American Football International (April 2, 2021).

34.    The result has been that barriers that have once been built to keep women out of men's sports are slowly being broken down, as it has been acknowledged that "[b]oys and girls are often funneled into different sports long before biology gives boys an advantage, for reasons that may be more social than physical," and that the challenges of women breaking into men's sports are largely sociological rather than physical. *See* Jane McManus, *Can women play with the men?,* ESPN (May 9, 2011).

35.    Moreover, the value of women as assets on football teams has been recognized. As Steve Olmeyer of CBS Sports stated, "[t]eams need diversity in player size, and skills to be successful [but] the game is much deeper than just the players. And in the NFL of today, women are finding their footing." *See* Wahl.

36.    Women have proven so capable of competing in traditionally male-dominated sports that 2,401 females joined male high school varsity football teams in 2017 alone. *Id.* By way of example, and not limitation:

> a.   Erin DiMeglio, quarterback for her high school team in South Florida, made a game winning pass in her first game in 2012;

b. In 2018, a Mississippi girl, Kaylee Foster, kicked a game-deciding extra point for her high school team;

c. In 2015, Brooke Liebsch became quarterback for Liberty North High School freshman team in Missouri;

d. Lisa Spangler played middle linebacker for Fort Vancouver High School in Washington in 2011;

e. Erin Dimeglio played as the first female quarterback in Florida varsity history in 2012;

f. Mary Kate Smith became the first female to make the South Jones High School team in Mississippi in 2014 as kicker; and

g. In 2015, Tatum Koenig became the first female to play football at West Branch High School located in Iowa, playing wide receiver and safety.

37.    The thousands of females that have joined male football teams have proven to be capable, not endangered, and plenty talented.

38.    As a result, while there is still room for improvement, many schools have actively enacted and/or made changes to their policies to allow for equal access for all players, regardless of their sex or gender identity, to compete on sports teams.

39.    Unfortunately, Defendant Valley Christian was not among the litany of schools who embraced this move towards equality and equal opportunity.

40.    Rather, Defendant Valley Christian, relying on the very antiquated and misogynistic views of womanhood that served to place barriers on women's participation in athletics in the first place, actively nurtured and endorsed an educational environment fraught with discriminatory principals which served to preclude Plaintiff's participation on the football team.

II.    **Defendant Valley Christian's Membership in the California Interscholastic Federation**

41.    The California Interscholastic Federation ("CIF") is responsible for the governance of oversight of high school sports in the State of California and its membership includes both public and private high schools.

-6-

42.     The CIF is organized and operates exclusively under California's State Department of Education and is governed by the CIF Federated Council which consists of school superintendents, principals, athletic directors, educators, and allied organizations.

43.     At all times relevant to this Complaint, Defendant Valley Christian was a member school of the CIF.

44.     Indeed, in Defendant Valley Christian's "Parent-Student Handbook", Defendant Valley Christian states that it "is a member of the CIF, division 5A and participates in the Coast Valley League" and fields an "eight-man" football team that is comprised of its high school "senior boys". Handbook at p. 34.

45.     At all relevant times, Cuyama Valley was and is a member school of the CIF and competes in the Coast Valley League alongside Defendant Valley Christian.

46.     Pursuant to CIF's "2020-2021 Constitution and Bylaws, Article I, Name and Purpose", one of the many purposes of the CIF is "to serve as an organization through which member high schools may mutually adopt rules relating to interscholastic athletics (grades 9-12) and establish agreed upon minimum standards for certain aspects of the interscholastic athletic program . . .." Article I, Paragraph 11 (A).

47.     One of the stated purposes of the CIF is that it "promotes equal opportunity for all the youth in California secondary school athletic programs regardless of "disability, sex, gender, gender identity, gender expression, nationality, race or ethnicity, religion or sexual orientation". Article I, Paragraph 11 (F).

48.     The CIF further provides as one of its "16 Principles of Pursuing Victory with Honor", is that "[b]ecause of the powerful potential of sports as a vehicle for positive personal growth, a broad spectrum of school sports experiences should be made available to all of our diverse communities". Article I, Paragraph 12 (M).

49.     In accordance with the above principles, in sports where a school has separate boys' and girls' teams, girls are not allowed on boys' teams, however in sports such as football and baseball that do not have girls' teams, girls are allowed to play.  Article 30, Section 300.

50.     "School boards, superintendents, principals, school administrators and everyone involved at any level of governance in the CIF must maintain ultimate responsibility for the quality and integrity of the CIF programs.  Such individuals must assure that education and character development responsibilities are not compromised to achieve sports performance goals and that the academic, social, emotional. . . and ethical well-being of student-athletes is always placed above desires and pressures to win". Article I, Paragraph 12 (I).

51.     The CIF will not tolerate discriminatory conduct or practices in its athletic programs and related activities, and mandates that "[m]ember schools are responsible for monitoring and assuring compliance with [the] standards [specified in CIF's Constitution and Bylaws]." Article I, Paragraph 11 (G).

52.     "Membership in the [CIF] is contingent upon compliance with the rules and regulations of the organization's Constitution and Bylaws", including, without limitation, the CIF's non-discrimination provision(s). Article I, Paragraph 11 (G).

53.     As a member of the CIF, Defendant Valley Christian was thus obligated to abide by and enforce the terms, conditions, policies, and regulations of the CIF.

54.     Moreover, as a member school of the CIF, Defendant Valley Christian was obligated to comply with the provisions of Title IX and all applicable civil rights laws because a condition of membership in the CIF is to "not discriminate on the basis of sex" and "[p]rivate schools in the CIF [are obligated to] comply with Title IX as it is a 'civil rights' issue protected by federal law". *See* CIF, Equity in Athletics at p. 3.

55.     Where a member school fails to comply with the CIF Constitution and Bylaws, it is subject to a penalties, sanctions, and possible suspension from the CIF. *See* CIF Article 2.

**III.    Plaintiff's History as an Athlete and Member of Cuyama Valley's Football Team**

56.     Plaintiff began attending Cuyama Valley school district in 2010.

57.     From a young age, Plaintiff demonstrated exceptional talent as a multi-sport athlete in sports that are largely male-dominated, playing baseball, football, and volleyball. She is also an accomplished horsewoman in rodeo and races stock cars.

58.     Plaintiff is accustomed to being the only female on the team of a predominantly male sport. For example, Plaintiff has previously won prize money for her performance in racing mini stocks, a sport that typically only involves males, in the modified adult men's category.

59.     Plaintiff's athletic ability never held her back nor put her in danger. To the contrary, Plaintiff has consistently risen to the challenge and has often outperformed her male teammates and competitors.

60.     During the 2020-2021 academic year, Cuyama Valley had one varsity football team, which operated under an "eight-man football" system wherein there are eight players on the field at once, as opposed to eleven in traditional football.

61.     Plaintiff, having experience in football including many years playing in community flag football leagues, was a standout in varsity team tryouts given her exceptional athleticism, speed, and agility, and earned the position of wide receiver on the team.

62.     Plaintiff was the only female on the roster of Cuyama Valley's football team for the 2020-2021 school year.

63.     Plaintiff's name, which is typically a name associated with a female gendered individual, was published on the roster to all teams in the Coast Valley League from the beginning of the 2020-2021 football season.

64.     Cuyama Valley's roster was also available online via MaxPreps, the online source for high school sports where coaches, school administrators, and others can access information about a high school team, its players, season record and more.

65.     As one of only two rostered wide receivers on Cuyama Valley's football team, Plaintiff took her position seriously. Plaintiff trained vigorously and prepared herself during summer workouts and training sessions to be ready to compete in all scrimmages and games that Cuyama Valley was scheduled to play in for the 2020-2021 football season.

## IV.   **Plaintiff Plays Her First Scrimmage Against Valley Christian**

66.     On March 13, 2021, Plaintiff travelled to Defendant Valley Christian's campus to play in a league scheduled scrimmage game.

67.     Plaintiff played nearly the entire game as wide receiver for Cuyama Valley with no issue.

68.     Significantly, Plaintiff had her helmet on for the entire game, so no one from Defendant Valley Christian's team knew that she was female.

69.     Not a single member of the team complained while Plaintiff was playing or made any negative comments about her athletic ability. To the contrary, the game was played as a typical, competitive eight-man football game without issue.

70.     The game was attended by several spectators, many of which, upon information and belief, were Defendant Valley Christian students, employees, and administrators.

71.     Similarly, none of the spectators made any negative comments or had any concerns regarding the game while it was being played.

72.     The only issue occurred at the conclusion of the scrimmage when Plaintiff removed her helmet. Only once her helmet was removed could Defendant Valley Christian's team, coaches, parents and, on information and belief, Defendant Mikkelson, see that Plaintiff was, in fact, female, and that the Defendant Valley Christian football team had been competing against a *female* the entire scrimmage.

73.     After visually seeing that Plaintiff was a female, the observers, coaches and administrators of Defendant Valley Christian, including Defendant Mikkelson, glared at Plaintiff while shaking their heads in disbelief.

74.     The staring and headshaking persisted as Plaintiff quietly exited the football field, mortified and chastised. Plaintiff made her way towards the parking lot to find solace in her mother, but she could feel the rebuke of Defendant Valley Christian's team and the spectators even as she walked away.

Complaint

75.   Plaintiff was humiliated, embarrassed and shocked by the public display of unwelcomed reactions and conduct by Defendant Valley Christian, including without limitation, their coaches, athletic director(s), and school administrators, who were present at the time it became apparent that Plaintiff, a female, had played in a football game on their premises opposite their high school boys varsity football team.

76.   Plaintiff did not understand or know at the time why she was stared down and glared at in the demeaning, unwelcoming and hostile manner by Defendant Valley Christian though she would unfortunately learn that she had become the target of such public distain because she, a female, had dared to compete in a "men's sport."

**V.   Defendant Valley Christian Announces It Will No Longer Compete Against Cuyama Valley Based Solely on Plaintiff's Gender**

77.   Approximately two days after Plaintiff was publicly scarred and humiliated by the whispers and stares at the game against Defendant Valley Christian, she learned through her high school athletic department that Defendants First Baptist and Mikkelson had notified Cuyama Valley's Superintendent, "Mr. Gamino," that Plaintiff was not welcome on Defendants Valley Christian's and First Baptist's shared premises to compete in a football game there again solely due to the fact that she was female.

78.   Indeed, Defendant Valley Christian and Mikkelson were so offended and disgusted that a female was a member of Cuyama Valley's football team that they made the decision to uproot their entire football schedule to avoid playing against Cuyama Valley and Plaintiff.

79.   Defendant Mikkelson sent a didactic letter to Mr. Gamino, which sought to justify Defendants' discriminatory and biased decision not to permit Plaintiff back on Defendant Valley Christian's football field.

80.   Mikkelson's letter served pretextual excuses for Defendants' abhorrent, patronizing behavior, claiming that Defendant Valley Christian "is guided, first, by the authority of the Bible," and noted that, following instruction from the Bible, Defendants had a policy prohibiting "physical contact between boys and girls at Valley Christian Academy." *See* Letter (undated) from Defendant

Mikkelson, Defendant First Baptist and Defendant Valley Christian to Mr. Gamino (hereinafter, the "Mikkelson Discrimination Letter," attached hereto as Exhibit A).

81.     Defendant Mikkelson went on to provide more excuses, such as stating how the teachings at Defendant Valley Christian focused on training men to "protect and provide for their families in the future," and to "follow values" wherein women are treated, in essence, as helpless but "precious" beings meant to be treated with "respect."

82.     In other words, in Defendants' eyes, Plaintiff, as a woman, was too weak and frail to compete in a "man's sport" such as football, even though she already had done so, against Defendant Valley Christian, successfully.

83.     Incredibly, despite the fact that Cuyama Valley's football roster was readily available to Defendants, Defendant Mikkelson asserted in his letter that Defendants were "not aware that [Cuyama Valley's] roster included a young lady" and declared, in no uncertain terms, that Defendants "*[would] not play a team that has a female as part of its football team*."

84.     Defendants made it clear to Plaintiff, among others, that their refusal to play Cuyama Valley High School's football team was for no reason other than their intentional discriminatory animus against Plaintiff based on her gender.

85.     Indeed, but for Plaintiff's gender as female, Defendants would not have refused to play Cuyama Valley's football team again.

86.     As evidenced by Defendant Mikkelson's letter, Plaintiff, as a female, was unwelcome on a male football team and because of her gender she was forbidden from coming onto Defendants Valley Christian's and First Baptist's shared premises for the purpose of competing.

87.     Such decision was in direct contravention of the mandates of the CIF, which require its member schools to adhere to its non-discrimination policies and which decreed that females may compete on teams with males where there is no single-sex sports team for females, such as football.

88.     Although Defendant Valley Christian is a member school of the CIF and represents itself to other CIF member high school sports teams that as a condition of being a member school it must adhere to antidiscrimination policies, including compliance with Title IX and all applicable

and related regulations governing such conduct, Defendant Valley Christian intentionally promulgated, and upon information and belief, continues to promulgate, insidious discriminatory practices to the direct detriment of female students.

89.     High school sports' officials, including an official from Cuyama Valley, as representatives of the CIF, informed Defendants that their conduct in refusing to play a game with Cuyama Valley based on Plaintiff's gender violated state and federal laws, the applicable provisions of the CIF, and other regulations governing interscholastic athletic participation.

90.     Despite this, Defendants have refused to reconsider their discriminatory decision and have confirmed their commitment to exclude Plaintiff from football games at Defendant Valley Christian due entirely and only because of Plaintiff's gender.

91.     As a result of Defendants' actions and/or inactions, Plaintiff has suffered severe emotional distress.

**FIRST CLAIM FOR RELIEF**
**Violation of Title IX --Sex Discrimination and/or Hostile Environment**
**(Against Defendant Valley Christian)**

92.     Plaintiff refers to, and incorporates by reference, paragraphs 1 through 91 as though fully stated herein.

93.     Title IX provides, in relevant part, that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

94.     Title IX applies to all public and private educational institutions that receive federal funds, including a religious school, such as Defendant Valley Christian, absent an exemption.

95.     Title IX prohibits discrimination based on sex in a school's "education program or activity," which includes all the school's operations.

96.     On information and belief, Defendant Valley Christian receives federal financial assistance and is thus subject to Title IX. Alternatively, Defendant Valley Christian, as a member school of the CIF, is obligated to comply with and is subject to Title IX.

-13-

97.     Title IX includes an implied private right of action, without any requirement that administrative remedies, if any, be exhausted. An aggrieved plaintiff may seek money damages and other relief.

98.     Title IX requires schools to promptly investigate complaints of gender discrimination and sexual harassment, and to take interim measures to ensure that students are not subjected to a hostile education environment. The failure to do so amounts to "deliberate indifference" for which schools may be held liable under Title IX

99.     Defendant Valley Christian, as a member school of the CIF and given its obligations to comply with Title IX, knew, or in the exercise of due care should have known, that it and Defendant First Baptist's employees, including without limitation, Defendant Mikkelson, harbored discriminatory beliefs and held unlawful biases against females which motivated their action and treatment of females, specifically, Plaintiff.

100.     Defendant Valley Christian intentionally discriminated against Plaintiff based on Plaintiff's gender by deliberately refusing to allow Plaintiff to play football on Defendants' premises because she is female.

101.     Defendant Valley Christian, as a member school of the CIF, was aware of its obligations under the auspices of the CIF and its obligations to comply with Title IX.

102.     Despite such knowledge, Defendant Valley Christian created an environment which facilitated and promoted discrimination against females in interscholastic athletics for the purpose of depriving female athletes, such as Plaintiff, of educational opportunities based on sex.

103.     After notice of Defendants' discriminatory actions, Defendant Valley Christian acted with deliberate indifference by refusing to remedy, among other things, Defendant Mikkelson's and Defendant First Baptist's violations of Plaintiff's rights to compete in interscholastic sports in an environment free from gender discrimination pursuant to the rules and regulations promulgated by the CIF and Title IX.

104.     Defendants' determination to discriminate against Plaintiff on the basis of her gender was intentional and unreasonable in light of the known circumstances.

-14-

105.    Defendant Valley Christian's failure to investigate and/or remedy Defendant Mikkelson's decision to bar Plaintiff from participation in further football games with Defendant Valley Christian based solely on Plaintiff's gender was intentional and unreasonable in light of the known circumstances.

106.    Defendant Valley Christian's actions and/or inactions and/or omissions constitute "deliberate indifference" in violation of Title IX.

107.    Defendant Valley Christian caused Plaintiff to suffer discrimination so severe, pervasive, or objectively offensive that it deprived Plaintiff of full access to educational opportunities and/or benefits.

108.    As a direct and foreseeable result of Defendant Valley Christian's actions and/or inactions, Plaintiff has sustained, and will continue to sustain, substantial injury, damage, and loss, including, but not limited to, mental anguish; severe emotional distress; injury to reputation, loss of educational opportunities; and loss of possible future career prospects.

109.    Accordingly, as a result of Defendant Valley Christian's actions and/or inactions, Defendant Valley Christian is liable to Plaintiff for damages in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**Fourteenth Amendment Violation of Equal Protection Clause, 42 USC § 1983**
**(against all Defendants)**

110.    Plaintiff refers to, and incorporates by reference, paragraphs 1 through 109 as though fully stated herein.

111.    As stated herein and above, Defendant Valley Christian was, at all times relevant, a member school of the CIF.

112.    The bylaws and regulations of the CIF prohibit discrimination on the basis of sex in interscholastic athletics and mandates that its member schools, as a condition to maintaining membership in the CIF, must comply with all CIF regulations and policies as well as Title IX.

113.    Defendants, in their administration and operation of Defendant Valley Christian as a member school of the CIF, are obligated to comply with the constitutional rights afforded to member

participants in interscholastic athletics as promulgated by the bylaws and all applicable provisions of the CIF.

114.   Defendant Valley Christian, as a member school of the CIF, acted under color of state law to intentionally discriminate against Plaintiff on the basis of her gender and deprived Plaintiff of her constitutional right to equal treatment and protection as guaranteed to her under the U.S. Constitution.

115.   Defendant Valley Christian and Defendant First Baptist failed in their responsibilities and obligations as promulgated by the CIF to provide an environment for participation in interscholastic athletics to Plaintiff at CIF member schools free from discrimination and harassment who suffered distress and harm as a result of said failure.

116.   As superintendent on Defendant Valley Christian and lead pastor of Defendant First Baptist, Defendant Mikkelson acted within his official capacity to intentionally discriminate against Plaintiff on the basis of sex vis-à-vis the Mikkelson Discrimination Letter and decision to deprive Plaintiff equal access and treatment on the basis of her gender.

117.   Defendant Valley Christian and Defendant First Baptist had actual and/or constructive knowledge of Defendant Mikkelson's discriminatory conduct and possessed the authority and duty to take corrective action to prevent and end the discrimination.

118.   Instead, Defendant Valley Christian and Defendant First Baptist acquiesced and ratified Defendant Mikkelson's discriminatory conduct and decisions, despite knowing that such conduct was prohibited by the CIF and other applicable antidiscrimination policies, rules, regulations, and law.

119.   As a result of Defendants' actions and/or inactions, Plaintiff suffered discrimination and was deprived access to the educational opportunities and/or benefits to which she is entitled.

120.   As a direct and foreseeable result of Defendants' actions and/or inactions, Plaintiff has sustained, and will continue to sustain, substantial injury, damage, and loss, including, but not limited to, mental anguish; severe emotional distress; injury to reputation, loss of educational opportunities; and loss of possible future career prospects.

121.    Accordingly, because of Defendants' actions and/or inactions, Defendants are liable to Plaintiff for damages in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
**Violation of California Education Code §§ 200 et seq.**
**(against Defendant Valley Christian)**

122.    Plaintiff refers to, and incorporates by reference, paragraphs 1 through 122 as though fully stated herein.

123.    California Education Code §§ 200 *et seq*. provides for a private right of action for intentional discrimination on the basis of sex.

124.    Section 220 of the Education Code provides, in pertinent part: "[n]o person shall be subjected to discrimination on the basis of …gender….in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance or enrolls pupils who receive state student financial aid.".

125.    As a private school member of the CIF, Defendant Valley Christian is obligated under the various applicable sections of the CIF to comply with the provisions of Title IX and all applicable civil rights laws, which includes the applicable provisions of the California Education Code because "a condition of membership in the CIF [requires that Defendant Valley Christian] not discriminate on the basis of sex".

126.    The California legislature specifically declared its intent that an action under the Education Code shall be interpreted as consistent with Title IX (Cal. Ed. Code 201 (g)).

127.    A plaintiff may maintain an action for monetary damages against a school district when the plaintiff alleges that she suffered severe, pervasive, and offensive harassment that effectively deprived the plaintiff of the right of equal access to educational benefits and opportunities; the school had actual knowledge of the harassment; and the school responded with deliberate indifference. *See Donovan v. Poway Unified School Dist.,* 167 Cal.App.4th 567, 603-09 (2008).

128.    The California legislature recognized that all pupils enrolled in the state public schools have the inalienable right to participate in their educational activities and programs (e.g.,

interscholastic sports) that are safe, secure, and peaceful. Cal. Ed. Code 32261 (a), Article I, section 28 (c) of the California State Constitution.

129.    As described herein and above, Defendant Valley Christian failed in its responsibilities to provide an environment free from discrimination to Plaintiff.

130.    Specifically, Defendant Valley Christian created an environment which facilitated and promoted discrimination against females in interscholastic athletics for the purpose of depriving female athletes, such as Plaintiff, of educational opportunities on the basis of sex.

131.    Defendant Valley Christian deprived Plaintiff of equal access to educational opportunities and failed to provide Plaintiff with an environment free from discrimination when Defendant Valley Christian, by and through its agents and representatives, including, but not limited to, Defendant Mikkelson, intentionally barred Plaintiff from engaging in football games on its premises on the basis of Plaintiff's gender.

132.    After notice of Defendants' discriminatory actions, Defendant Valley Christian acted with deliberate indifference by refusing to remedy, among other things, Defendant Mikkelson's and Defendant First Baptist's violations of Plaintiff's rights to compete in interscholastic sports in an environment free from gender discrimination pursuant to the rules and regulations promulgated by the CIF, Title IX, and the California Education Code.

133.    Defendant Valley Christian's failure to investigate and/or remedy Defendant Mikkelson's decision to bar Plaintiff from participation in further football games based solely on Plaintiff's gender was intentional and unreasonable in light of the known circumstance.

134.    Defendants Valley Christians actions and/or inactions and/or omissions constitute "deliberate indifference".

135.    As a direct and foreseeable result of Defendant Valley Christian's actions and/or inactions, Plaintiff has sustained, and will continue to sustain, substantial injury, damage, and loss, including, but not limited to, mental anguish; severe emotional distress; injury to reputation, loss of educational opportunities; and loss of possible future career prospects.

136.    Accordingly, as a result of Defendant Valley Christian's actions and/or inactions, Defendant Valley Christian is liable to Plaintiff for damages in an amount to be determined at trial.

-18-

**FOURTH CLAIM FOR RELIEF**

**Violation of the Unruh Civil Rights Act, Cal. Civil Code Section 51 *et seq*
(against Defendants Valley Christian and First Baptist)**

137.    Plaintiff refers to, and incorporates by reference, paragraphs 1 through 136 as though fully stated herein.

138.    The Unruh Civil Rights Act, Cal. Civ. Code 51 *et seq*., provides that all persons are entitled to full and equal services in all business establishments regardless of their sex or gender and that no business establishment shall discriminate against a person based on their sex or gender.

139.    Cal. Civ. Code 52 (a) declares: "Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6."

140.    Cal. Civ. Code 52 (a) applies to Valley Christian and First Baptist. *See also Aikins v. St. Helena Hosp*., 843 F. Supp. 1329, 1339 (N.D. Cal. 1994).

141.    A school is considered a "business establishment" for purposes of the Unruh Civil Rights Act. Cal. Civ. Code 51.5.; *Nicole M. By and Through Jacqueline M. v. Martinez Unified School District*, 964 F.Supp. 1369 (N.D. Cal. 1997).

142.    Defendants Valley Christian and First Baptist derive a substantial amount of revenue from members of the public, including, but not limited to, receipt of tuition from students, contributions from alumni, and use of their facilities by members of the public.

143.    Based on the substantial revenue that Defendants Valley Christian and First Baptist collectively receive from members of the public, Defendants Valley Christian and First Baptist are business establishments within the meaning of California Civil Code Sections 51.5 and 51(e)(5), and are thus prohibited from discriminating against any person on the basis of sex or gender.

144.    Defendants Valley Christian and First Baptist intentionally discriminated against Plaintiff on the basis of her gender and deprived Plaintiff of the advantages, privileges and ability to come onto Defendants' premises because of Plaintiff's status as a female athlete.

145.    As a direct and foreseeable result of Defendants Valley Christian's and First Baptist's actions and/or inactions, Plaintiff has sustained, and will continue to sustain, substantial injury, damage, and loss, including, but not limited to, mental anguish; severe emotional distress; injury to reputation, loss of educational opportunities; and loss of possible future career prospects.

146.    Defendants Valley Christian and First Baptist collectively discriminated against Plaintiff on the basis of sex and are in violation of the Unruh Civil Rights Act.

147.    Accordingly, as a result of Defendants Valley Christian's and First Baptist's actions and/or inactions, Defendants Valley Christian and First Baptist are liable to Plaintiff for damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

(i)     Damages in an amount to be determined at trial to compensate Plaintiff for past and future pecuniary and/or non-pecuniary damages, including but not limited to damages to Plaintiff's physical well-being, emotional and psychological damages, loss of educational opportunities and /or career opportunities, damages to reputation, past and future economic losses, and loss of future career prospects;

(ii)    Judgment for attorneys' fees, pursuant to any applicable statute(s);

(iii)   Judgment for all other reasonable and customary costs and expenses that were incurred in pursuit of this action;

(iv)    Prejudgment interest and post judgment interest as may be permitted by law and statute;

(v)     Injunctive Relief because Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to her constitutional rights to equal protection under the law unless Defendants are enjoined from the continuous implementation and enforcement of the unequal treatment to high school athletes based on sex as currently provided under their existing policies or any other order they may claim gives them the right to prevent a female from competing in a high school athletic event with their school and on their premises; and

(vi)    Such other and further relief as this Court may deem just and proper.

Complaint

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact, claims  and issues raised by her Complaint.

Dated: September 22, 2021                    Respectfully Submitted,

**NESENOFF & MILTENBERG, LLP**

**By:** */s/ Susan Stark*
       **Susan Stark, Esq.**
       **Andrew T. Miltenberg, Esq.**
       ***(pro hac vice pending)***
       **Stuart Bernstein, Esq.**
       ***(pro hac vice pending)***
       **Gabrielle M. Vinci, Esq.**
       ***(pro hac vice pending)***

       ***Attorneys for Plaintiff***

       **-and-**

**PALAY HEFELFINGER, APC**

**By:** */s/ Brian Hefelfinger*
       **Brian Hefelfinger, Esq.**

       ***Local Counsel for Plaintiff***

Complaint

# EXHIBIT A



## FIRST BAPTIST CHURCH
JOEL MIKKELSON, LEAD PASTOR

Dear Mr. Gamino,

I am writing to explain a decision that our school, Valley Christian Academy, has made that impacts the upcoming football schedule.  Our school is guided, first, by the authority of the Bible in our lives.  Illustratively, we describe this as the very pavement of the road on which our lives are driving.  God's Word gives instructions as to how men are to treat women.  1 Timothy 5:1-2 gives direction to men to treat, "older women as mothers, and with all propriety, the younger women as sisters."  Our *Parent-Student Handbook* operates as the guardrails of that road, giving specific direction as the Bible applies to our lives.  In our Handbook, one of our clearly defined boundaries is, "There is to be no physical contact between boys and girls at Valley Christian Academy."

We want our football coaches to train our male athletes to work hard on the football field between the whistles.  We want them to knock the opponent over and help them up when the play is done.  We want each player's dad to set an example for their son by the way he treats his mother, his wife, his sisters, his daughters and all women.  We want our young men to follow values that behave in various ways like holding a door open for a lady, or stepping aside to let women go first.  We want our young men to protect and provide for their families in the future.  This desire is founded on the guiding principles of the Bible regarding the care of a woman.

As we train our young men in this world, we want to train them rigorously to admire and value women as precious and worthy of respect.  We recognize that we live in a society that exploits women and treats them as commodities rather than with the respect and honor that they deserve.  Football is a violent game, and we understand the value of such in training our young men within the boundaries of an organized sport.  However, because of the nature of its contact, we will not play a team that has a female as part of its football team.

We recognize that this puts you in a difficult position, specifically regarding your football schedule.  This was a decision made in the past that now has ramifications on this year's football schedule.  We were not aware that your roster included a young lady.  This application of our policy is not a policing of your school's policies.  Our goal is not to get you to change your mind about your school's decisions or policies.  We are simply stating our position and the results of that position.  We mean no ill will at all towards Cuyama Valley High School or any of its students or their families.  Please do not hesitate to let me know how we can further explain ourselves as needed.  I am happy to continue communication as desired via phone call, email, or in person.

In Cheerful Service,

Pastor Joel Mikkelson
Superintendent
Valley Christian Academy

2970  SANTA MARIA WAY .  SANTA MARIA . CA . 93455
805.937.8405    www.fbcsantamaria.com
home of Valley Christian Academy  K-12