NESENOFF & MILTENBERG, LLP.
ANDREW T. MILTENBERG (NY State Bar
No. 2399582; *admitted pro hac vice*)
amiltenberg@nmllplaw.com
STUART BERNSTEIN (NY State Bar
No. 2371953; *admitted pro hac vice*)
sbernstein@nmllplaw.com
GABRIELLE VINCI (NY State Bar
No.: 5309273; *admitted pro hac vice*)
gvinci@nmllplaw.com
363 Seventh Avenue, 5th Floor
New York, New York 10001-3904
Telephone: (212) 736-4500
Facsimile: (212) 736-2260

SUSAN E. STARK, SBN 147283
sstark@nmllplaw.com
4 Palo Alto Square
3000 El Camino Real, Suite 200
Palo Alto, California 94306
Telephone: (650) 209-7400

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| E.H., a minor by and through her guardian *ad litem* SONYA HERRERA<br><br>Plaintiff,<br><br>v.<br><br>VALLEY CHRISTIAN ACADEMY, FIRST BAPTIST CHURCH, JOEL MIKKELSON, and DOES 1-30,<br><br>Defendants. | Case No.: 2:21-cv-07574-SB-GJS<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date:  February 18, 2022<br>Time:  8:30 AM<br>Location: Courtroom 6C: 350 West 1st Street, Los Angeles, California<br><br>Original Complaint Filed: 09/22/2021<br>First Amended Complaint Filed: 12/20/2021<br>Trial Date: 10/11/2022 |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................... 1

II.     THE FACTS AS ALLEGED IN THE FAC ...................................................... 2

        A.      Plaintiff's History as a Female Athlete and Enrollment on Cuyama
                HS's Football Roster ............................................................................ 2

        B.      Defendants' Membership in the California Interscholastic Federation .. 3

        C.      Defendants Intentionally Discriminate Against Plaintiff on the Basis
                of her Sex .......................................................................................... 3

III.    LEGAL STANDARD ............................................................................. **5**

IV.     ARGUMENT ...................................................................................... **5**

        A.      Valley Christian Is Subject to Liability Under Title IX ........................ 5

                1.      Plaintiff Has Sufficiently Pled that Valley Christian Is the
                        Recipient of Federal Financial Assistance .................................. 6

                        a.      First Baptist's Uncontested and Voluntary Receipt of
                                Federal Funding Under the Payroll Protection Program
                                ("PPP" or the "Program") Subjects Valley Christian to
                                Liability Under Title IX. .................................................. 6

b.      Defendants' Tax-Exempt Status Constitutes Financial
Assistance Under Title IX Precedent ................................9

2.    Defendants Consented to be Subject to Liability Under
Title IX by Virtue of Joining the CIF .........................................10

3.    Plaintiff Was Not Required to be a Student of Valley Christian
in Order to be Protected from Discrimination Perpetrated by
Defendants' Agents While on Valley Christian's Premises.......12

4.    Plaintiff's Claims Are Not Barred by any Title IX Exception ...14

a.      The Contact Sports Exception Is Inapplicable .................14

b.      Plaintiff Has Sufficiently Pled that Subjecting Valley
Christian to Liability Under Title IX Would Not Run
Afoul of Valley Christian's Alleged Religious Tenets ....16

B.    Plaintiff Has Sufficiently Stated a Claim Under California Education
Code § 220 ..........................................................................17

C.    The Unruh Civil Rights Act Applies to All Defendants......................19

V.    PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND TO ADD
MIKKELSON TO PLAINTIFF'S THIRD CLAIM FOR RELIEF AND, IF
NECESSARY, TO PRESERVE ANY CLAIM..............................................22

VI.    CONCLUSION .........................................................................22

iii

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*AECOM v. Zurich Am. Ins. Co.*, 2021 WL 6425546, at *6 (C.D. Cal. Dec. 1, 2021) 5

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................. 5

*Awah v. Mansfield Kaseman Health Clinic*, 2021 WL 6197415 (D. Md. Dec. 30, 2021) ................................................................................................................. 7, 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) .............................................. 5

*Cannon v. Univ. of Chicago*, 441 U.S. 677, 678 (1979) ........................................... 7

*City of Sausalito v. O'Neill*, 38 F.3d 1186, 1200 (9th Cir. 2004) .......................... 12

*Clarke v. Secs. Indus. Ass'n*, 479 U.S. 388, 399 (1987) .......................................... 13

*Conviser v. DePaul Univ.*, 532 F. Supp. 3d 581, 588 (N.D. Ill. 2021) .............. 12, 13

*Demarco v. Holly Cross High Sch.*, 4 F.3d 166, 170 (2d Cir. 1993) ...................... 17

*Desertrain v. City of Los Angeles*, 754 F.3d 147, 1154 (9th Cir. 2014) ................. 22

*Deutsche Bank Nat'l Tr. Co as Tr. for Am. Home Mtge. Inv. Tr. 2007-2 v. Fid. Nat'l Tit. Ins.Co.*, 2021 WL 5002215, at *2 (9th Cir. Oct. 28, 2021) ............................ 22

*Doe v. California Lutheran High Sch. Ass'n,* 170 Cal. App. 4th 828 (2009) ........... 19

*Doe v. Regents of Univ. of California*, 2022 WL 98135, at *5 (9th Cir. Jan. 11, 2022) ....................................................................................................................... 5

*Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016) ......................................... 22

*Fernandez v. Bruno Northfleet, Inc.*, 2021 WL 4851378 (S.D. Fla. Oct 18, 2021) 7, 8

*Fulani v. League of Women Voters Educ. Fund*, 684 F. Supp. 1185, 1192 (S.D.N.Y. 1988) ...................................................................................................................... 9

*Goodman v. Archbishop Curley High Sch., Inc.*, 149 F.Supp.3d 577, 586 (D. Md. 2016) ..................................................................................................................... 17

*Grove City Coll. v. Bell*, 465 U.S. 555, 563-70 (1984) ........................................... 11

*Hurd v. Cardinal Logistics Mgmt. Corp.*, 2019 WL 6718111, at *8 (W.D. Va. Dec. 10, 2019) *aff'd* 829 Fed. Appx. 620 (4th Cir. 2020) ........................................... 15

*Husbands v. Fin. Mgmt. Solutions, LLC.*, 2021 WL 4339436, at *8 (D. Md. Sept. 23, 2021)..................................................................................................................8

*Isbister v. Boys' Club of Santa Cruz, Inc.,* 40 Cal. 3d 72, 78-84 (1985).................21

*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005).........................6, 13

*Lexmark Int'l Inc. v. Static Control Components, Inc.* 572, U.S. 118, 126-28 (2014) ...............................................................................................................................12

*McGlotten v. Connally*, 338 F. Supp. 448, 461 (D.D.C. 1972)..................................9

*Mercer v. Duke Univ.*, 190 F. 3d 643, 644 (4th Cir. 1999) ..............................14, 15

*Mueller v. Auker*, 700 F.3d 1180, 1191 (9th Cir. 2012)...........................................22

*N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 526-27 (1982)...................................13

*Nat'l Coll. Athletic Ass'n v. Smith*, 525 U.S. 459, 468 (1999).............................9, 10

*O'Connor v. Village Green Owners Assn*. 33 Cal.3d 790, 795 (1983)....................19

*Pharaohs GC, Inc. v. U.S. Small Bus. Admin.*, 990 F.3d 217, 224 (2d Cir. 2021) .....6

*Radcliff v. Landau*, 883 F.2d 1481, 1483 (9th Cir. 1989) ........................................12

*Rand v. Midland Nat'l Life Ins.*, 857 F. Appx. 343, 345 (9th Cir. 2021)................22

*Rossley v. Drake Univ.*, 336 F. Supp. 3d 959 (S.D. Iowa 2018) ..............................13

*Schwake v. Arizona Bd. of Regents*, 967 F.3d 940, 947 (9th Cir. July 29, 2020) .......5

*Sharer v. Oregon*, 581 F.3d 1176, 1181 (9th Cir. 2009) ............................................8

*Smith v. BP Lubricants USA, Inc.*, 64 Cal. App. 5th 138, 151 (2021). ....................19

*Stevens v. Optimum Health Institute–San Diego*, 810 F. Supp. 1074, 1085 (2011) .22

*U.S. v. Baylor Univ. Med. Ctr.*, 736 F.2d 1039, 1048 (5th Cir. 1984 ........................7

**Statutes**

20 U.S.C. § 1681................................................................................................passim

20 U.S.C. § 1682...........................................................................................................7

29 U.S.C. § 794.............................................................................................................8

42 U.S.C. § 2000........................................................................................7, 9

Cal. Educ. Code § 201 .................................................................................18

Cal. Educ. Code § 220 ...........................................................................17, 18

**Other Authorities**

34 C.F.R. § 106.41 ................................................................................14, 15

45 C.F.R. § 1232.3 .......................................................................................8

Fed. R. Civ. P. 12(b)(6) ...............................................................................5

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.   INTRODUCTION

Plaintiff, E.H., a minor ("Plaintiff") by and through her guardian *ad litem* Sonya Herrera, respectfully submits this memorandum of points and authorities in opposition to Defendants Valley Christian Academy's ("Valley Christian's"), First Baptist Church's ("First Baptist's") and Joel Mikkelson's ("Mikkelson's") (collectively, "Defendants'") motion to dismiss Plaintiff's First Amended Complaint, (the "FAC") (Defendants' motion to dismiss the FAC is hereinafter referred to as the "Motion").

In this action, Plaintiff, a female football player on the Cuyama Valley High School's ("Cuyama HS's") football team[1], has alleged that Defendants intentionally discriminated against her on the basis of her sex when they explicitly barred Plaintiff from participating in any football games or scrimmages against Valley Christian because Defendants adamantly would not allow Valley Christian's male students to play football against a girl.

Defendants seek to have Plaintiff's claims dismissed in their entirety. Notably, in their Motion, Defendants do not contend that they did not discriminate against Plaintiff, or even argue that Plaintiff has insufficiently pled discrimination on the basis of her sex. Rather, Defendants attempt to skirt liability for their discriminatory actions by arguing that, even though the alleged instances of discrimination occurred, Defendants cannot be held responsible for them under the law. In so doing, Defendants misconstrue relevant precedent and ask the court to render a decision which stands in stark contrast to the letter and spirit of the applicable federal and state antidiscrimination statutes.

As set forth more fully below, when viewing the facts underlying Plaintiff's claims in the light most favorable to Plaintiff, Defendants' Motion must be denied.

---

[1] Please note, Plaintiff is no longer a student at Cuyama HS. However, at all times relevant to this litigation, Plaintiff was a student at Cuyama HS.

## II.     THE FACTS AS ALLEGED IN THE FAC

Plaintiff respectfully refers the Court to Plaintiff's FAC for a complete recitation of the facts and allegations underlying the instant dispute. The following is but a high-level summary of the relevant facts underlying the instant motion.

### A.     Plaintiff's History as a Female Athlete and Enrollment on Cuyama HS's Football Roster

Plaintiff, who is a minor-aged female, has participated in various sports from an early age. Throughout her life, Plaintiff has excelled as an athlete and often competed in what were typically viewed as "male sports" against male competitors. FAC ¶¶ 65-67.

In 2010, Plaintiff enrolled as a student in the Cuyama Valley school district. *Id.* ¶ 64. Years later, while enrolled in Cuyama HS, Plaintiff continued to play sports and, during the 2020-2021 academic year, tried out for and was selected to play on Cuyama HS's 8-man football team. *Id.* ¶¶ 68-70. At the time, Plaintiff was the only female player on the team. *Id.* After joining Cuyama HS's football team, Plaintiff's name was added to Cuyama HS's roster of players, which was made publicly available. *Id.* ¶¶ 71-72. One of Cuyama HS's football competitors were (and, upon information and belief, are to this day) Valley Christian. *Id.* ¶¶ 49, 51.

Valley Christian is a private, religious pre-K through 12th grade school that is operated by and under the direction of First Baptist, an independent Baptist Church. *Id.* ¶¶ 19, 22. Although Valley Christian and First Baptist are private entities, during the COVID-19 pandemic, First Baptist applied for and received vital federal funding to pay wages to employees. *Id.* ¶¶ 29-31. Such funding was used, upon information and belief, to pay the wages of not only First Baptist's employees but also Valley Christian's workers, some of which overlap with First Baptist's staff. *Id.* In addition, upon information and belief, as a religious institution, Valley Christian receives a tax exemption. *Id.* ¶ 32.

B.    **Defendants' Membership in the California Interscholastic Federation**

At the time Plaintiff was rostered as a player on Cuyama HS's football team, Cuyama HS was a member of the California Interscholastic Federation (the "CIF"). *Id.* ¶ 51. Valley Christian was also a member of the CIF and competed in the same athletic conference, specifically the Coast Valley League, alongside Cuyama HS. *Id.* ¶¶ 49, 51.

The CIF is an organization operated exclusively under the direction of the California State Department of Education and is responsible for the governance of high school sports in the State of California. *Id.* ¶¶ 47-48. Membership in the CIF is voluntary, (*Id.* ¶ 60); however, member schools are mandated to comply with the rules and regulations of the CIF's Constitution and Bylaws, including the CIF's anti-discrimination policies. *Id.* ¶¶ 60, 62. The CIF mandates non-discriminatory conduct or practices in athletic programs and makes member schools responsible for monitoring and assuring their compliance. *Id.* ¶¶ 56, 57. In accordance with that mandate, the CIF requires all member schools to comply with Title IX. *Id.* ¶¶ 58-59.

Accordingly, as part and parcel of its membership in the CIF, Valley Christian agreed to abide by the antidiscrimination policies of the CIF, including the mandate to comply with Title IX. *Id.* ¶¶ 61-62.

C.    **Defendants Intentionally Discriminate Against Plaintiff on the Basis of her Sex**

During the 2020-2021 football season, Valley Christian invited Cuyama HS's football team to Defendants' campus to play a football scrimmage. FAC ¶ 76. Accordingly, on March 13, 2021, Plaintiff travelled with the Cuyama HS football team to Valley Christian as an invited guest and participated in a league sponsored football scrimmage. *Id.* ¶ 77. The game was attended by a multitude of spectators, including Valley Christian students, parents, and employees. *Id.* ¶ 81. Plaintiff played on the field during almost the entire game without incident. *Id.* ¶¶ 78-80, 82. At the

end of the game, Plaintiff removed her helmet and Defendants, as well as the game's spectators, were able to see that Plaintiff was, in fact, female. *Id.* ¶ 83. After seeing that Plaintiff was a girl, the observers, coaches and administrators of Valley Christian, including Mikkelson, expressed shock and disbelief that a female had come onto their field to play football with Valley Christian's male players. *Id.* ¶¶ 84-85. Plaintiff felt humiliated by the constant staring and leering she experienced as she left the field to find her mother in the parking lot. *Id.* ¶¶ 85-86.

Approximately two days later, Plaintiff learned that Defendants had notified Cuyama HS's Superintendent that Plaintiff was not welcome back to play football on Valley Christian's and First Baptist's shared premises solely because she was female. *Id.* ¶ 88.  Specifically, in a letter from Mikkelson, Valley Christian's superintendent and First Baptist's lead pastor (*Id.* ¶¶ 25-26), Defendants advised Cuyama HS's superintendent that, allegedly, Defendants' religious convictions prohibited contact between boys and girls and, therefore, Plaintiff was not welcomed to return to Valley Christian for the purpose of playing football against Defendants' all-male team. *Id.* ¶¶ 91-98, *Id.* at Ex. A.

As a result of Defendants' refusal to compete against Cuyama HS despite Plaintiff being an eligible and rostered member of the team, Defendants stripped Plaintiff from educational opportunities, namely the ability to participate in Valley Christian football scrimmages and games. *Id.* ¶ 98. Curiously, despite Valley Christian's alleged Christian values which were used to justify its refusal to play football against Plaintiff, multiple other Christian schools' football teams competed against Plaintiff and Cuyama HS without any objection or incident. *Id.* ¶¶ 102-104.

Following Mikkelson's letter, Defendants were notified that their conduct in refusing to play a game against Cuyama HS based on Plaintiff's sex violated state and federal laws, the applicable provisions of the CIF, and other regulations. *Id.* ¶ 106. Despite this, Valley Christian refused to reconsider its position and instead reaffirmed its refusal to permit a female to enter Defendants' school premises to play a football

game against male students.  *Id.* ¶ 107.

## III.   LEGAL STANDARD

To survive a motion to dismiss, the plaintiff must allege facts that are sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss pursuant to Rule 12(b)(6), "the allegations in the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party." *AECOM v. Zurich Am. Ins. Co.*, 2021 WL 6425546, at *6 (C.D. Cal. Dec. 1, 2021).

In the Title IX context, the Ninth Circuit has clarified that a plaintiff "need not meet the doctrinal tests … superimposed on the statute…" *Doe v. Regents of Univ. of California*, 2022 WL 98135, at *5 (9th Cir. Jan. 11, 2022). Rather, a court need only decide "'whether the alleged facts, if true, raise a plausible inference that the [school] discriminated [against the plaintiff] on the basis of sex.'" *Id*, at *5 (*quoting Schwake v. Arizona Bd. of Regents*, 967 F.3d 940, 947 (9th Cir. July 29, 2020)).

## IV.   ARGUMENT

### A.   <u>Valley Christian Is Subject to Liability Under Title IX</u>

Defendants put forth three arguments in support of their contention that Valley Christian is not subject to liability under Title IX. First, Defendants argue that Valley Christian is not an educational entity that receives federal financial assistance. Second, Defendants argue that Plaintiff is not a litigant within the zone of interest that Title IX protects. And lastly, Defendants argue that even if Title IX would apply, Valley Christian is able to escape liability under one or more of Title IX's statutory exemptions. For the reasons set forth below, Defendants' arguments should be rejected.

### 1.   Plaintiff Has Sufficiently Pled that Valley Christian Is the Recipient of Federal Financial Assistance

#### a.   First Baptist's Uncontested and Voluntary Receipt of Federal Funding Under the Payroll Protection Program ("PPP" or the "Program") Subjects Valley Christian to Liability Under Title IX.

Title IX prohibits sex discrimination by recipients of federal financial assistance. *See* 20 U.S.C. § 1681(a); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). Defendants argue that Plaintiff's claims under Title IX must be dismissed because, despite Defendants' reliance on federal funding during the COVID-19 pandemic, Defendants are not recipients of federal financial assistance. This argument should be rejected.

During the COVID-19 pandemic, the federal government instituted the PPP in order to lend emergency assistance to private businesses across the nation by providing available federal funds in the form of loans administered by the United States Small Business Administration ("SBA"). *See Pharaohs GC, Inc. v. U.S. Small Bus. Admin.*, 990 F.3d 217, 224 (2d Cir. 2021).

First Baptist applied for and received approximately $391,812.00 in federal funding as part of the Program (the "PPP loan"). (FAC ¶ 30). The SBA has promulgated guidance for Faith-Based Organizations regarding, among other things, the implications of receiving a PPP loan. *See* Stark Decl., Ex. A. In the SBA's *Frequently Asked Questions Regarding Participation of Faith-Based Organizations in the Paycheck Protection Program (PPP) and the Economic Injury Disaster Loan Program (EIDL)* (the "FAQ Sheet"), the SBA unequivocally states that "[r]eceipt of a loan through *any* SBA program constitutes Federal financial assistance and carries with it the application of certain nondiscrimination obligations." *See* Stark Decl., Ex. A, p. 2 (emphasis added).

Despite the clear language in the FAQ Sheet, Defendants argue that receipt of PPP funding should not subject Valley Christian to liability under Title IX because

6

the PPP loans were considered "contracts of insurance or guaranty" and therefore not considered federal financial assistance under Title IX. *See* 20 U.S.C. § 1682.

Understandably, the precedent related to this particular issue, that is whether receipt of a PPP loan amounts to federal financial assistance under Title IX, is scarce given the recency of the Program. However, courts *have* addressed this issue as it relates to parallel federal antidiscrimination statutes and have held, consistent with the SBA's clear and unequivocal guidance, that receipt by a private entity of a PPP loan is tantamount to receipt of federal financial assistance <u>even when the statute has an exemption for contracts of insurance or guaranty</u>.

Specifically, in *Awah v. Mansfield Kaseman Health Clinic*, 2021 WL 6197415 (D. Md. Dec. 30, 2021), the Maryland District Court considered whether the defendant's receipt of a PPP loan constituted federal financial assistance under Title VI of the Civil Rights Act of 1964 ("Title VI")[2]. *Id*. at *3-5. Title VI, like Title IX, prohibits discrimination against individuals "under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000(d). Also like Title IX, "Title VI excludes from coverage a federal 'contract of insurance or guaranty.'" *U.S. v. Baylor Univ. Med. Ctr.*, 736 F.2d 1039, 1048 (5th Cir. 1984) (*quoting* 42 U.S.C. § 2000d-1 and 42 U.S.C § 2000d-4). Despite this, the Court in *Awah* held that the defendant entity's receipt of PPP funding constituted receipt of federal financial assistance so as to subject the defendant to liability under Title VI. *Id*. at *3-5.

Similarly, in *Fernandez v. Bruno Northfleet, Inc.*, 2021 WL 4851378 (S.D. Fla. Oct 18, 2021), the Florida District Court considered whether the defendant's receipt of a PPP loan constituted federal financial assistance under Section 504 of the Rehabilitation Act of 1973 (the "Rehab Act"). *Id*. at *4. Under Section 504 of the Rehab Act, no person with a qualifying disability may be subject to discrimination by

---

[2] Notably, "Title IX was patterned after Title VI of the Civil Rights Act of 1964, and the drafters of Title IX explicitly assumed that it would be interpreted and enforced in the same manner as Title VI…" *Cannon v. Univ. of Chicago*, 441 U.S. 677, 678 (1979).

a recipient of federal financial assistance. *See* 29 U.S.C. § 794(a). The regulations interpreting the Rehab Act similarly exempt "a contract of insurance or guaranty" from the definition of "Federal financial assistance" under the statute. *See* 45 C.F.R. § 1232.3(f). In *Fernandez*, similar to Defendants here, the defendant argued that receipt of funds under the CARES Act did not constitute federal financial assistance under the Rehab Act. *Id.* at \*4. The Court disagreed; despite the carve out in the statute's definition of "Federal financial assistance", the Court in *Fernandez* found that the plaintiff's allegations that the defendant received PPP funding was sufficient at the pleadings stage to state a claim for relief under the Rehab Act. *Id.*

At least one other court has reached a similar conclusion regarding the implication receipt of PPP funding has on private businesses under the Rehab Act. *See Husbands v. Fin. Mgmt. Solutions, LLC.*, 2021 WL 4339436, at \*8 (D. Md. Sept. 23, 2021) (finding defendant's urging that it was only the recipient of funding in the form of PPP loans insufficient to overcome the plaintiff's allegations that the defendant received federal financial assistance under the Rehab Act).

Similar to the holdings in *Awah*, *Fernandez*, and *Husbands*, Plaintiff here has sufficiently alleged that First Baptist was the recipient of federal financial assistance in the form of receipt of a PPP loan. Also similar to the holdings in *Awah*, *Fernandez*, and *Husbands*, this Court should hold that First Baptist's alleged (and uncontested) receipt of a PPP loan constituted receipt of federal financial assistance under Title IX, as it would under Title VI and the Rehab Act.

Furthermore, to the extent Defendants argue that First Baptist's receipt of the PPP loan is insufficient to subject Valley Christian to liability under Title IX, such argument should be rejected. The Ninth Circuit has held that receipt of federal financial assistance can be direct or indirect. *See Sharer v. Oregon*, 581 F.3d 1176, 1181 (9th Cir. 2009). Indeed, the U.S. Supreme Court has held that "[e]ntities that receive federal assistance, *whether directly or through an intermediary*, are recipients within the meaning of Title IX…" *Nat'l Coll. Athletic Ass'n v. Smith*, 525 U.S. 459,

468 (1999) (emphasis added). In the FAC, Plaintiff has sufficiently alleged that Valley Christian was an indirect recipient of federal financial assistance. Specifically, Plaintiff has alleged that the wages of Valley Christian employees and teachers, including and specifically Mikkelson, were paid using funds received from First Baptist's PPP loan. (FAC ¶¶ 29-31).

Based on the foregoing, Plaintiff has sufficiently alleged that Valley Christian is the indirect recipient of federal financial assistance and, therefore, is subject to liability under Title IX.

### b. Defendants' Tax-Exempt Status Constitutes Financial Assistance Under Title IX Precedent

Defendants next argue that Valley Christian's status as a tax-exempt entity does not equate to Defendants' receipt of federal financial assistance under Title IX. At least two courts have used an entity's tax-exempt status as evidence that an otherwise private business received federal financial assistance under Title IX and the parallel statute, Title VI. *See McGlotten v. Connally*, 338 F. Supp. 448, 461 (D.D.C. 1972) (finding tax exemption constitutes federal financial assistance in the context of Title VI litigation); *Fulani v. League of Women Voters Educ. Fund*, 684 F. Supp. 1185, 1192 (S.D.N.Y. 1988) (concluding that defendant received "Federal financial assistance" within the meaning of both Title VI and Title IX because it received both direct grants and tax-exempt status).

Here, Plaintiff has sufficiently pled that Valley Christian is both a tax-exempt entity <u>and</u> receives indirect federal financial assistance. (FAC ¶¶ 29-32). Similar to the holdings in *McGlotten* and *Fulani*, such allegations are sufficient at the pleadings stage to demonstrate that Valley Christian is subject to liability under Title IX and Defendants' argument should be rejected.

9

1
2

### 2.      Defendants Consented to be Subject to Liability Under Title IX by Virtue of Joining the CIF

3      Defendants further argue that their voluntary membership in the CIF does not
4 subject Valley Christian to liability under Title IX, despite the clear terms of the CIF's
5 rules and policies. In essence, Defendants argue that the *only* thing that would subject
6 Valley Christian to liability under Title IX is the receipt of federal financial assistance.
7 For the reasons set forth *supra*, Plaintiff has sufficiently alleged that Valley Christian
8 is the indirect recipient of Federal financial assistance under Title IX, thus making
9 Point IV(B)(1)(d) of Defendants' argument moot.

10      Even if the Court finds that Defendants are not recipients of federal financial
11 assistance (which they are), the Court may still find that Defendants are subject to
12 liability under Title IX based on their membership in the CIF. Preliminarily,
13 Defendants cite a single case, *Nat'l Coll. Athletic Ass'n v. Smith*, 525 U.S. 459 (1999)
14 (hereinafter, "*NCAA v. Smith*") in support of their argument that membership in the
15 CIF is insufficient to subject Valley Christian to liability under Title IX. However,
16 that case is easily distinguishable.

17      In *NCAA v. Smith*, the U.S. Supreme Court was faced with the question of
18 whether the NCAA, a private sports organization, was subject to liability under Title
19 IX because the organization collected dues from member schools who received
20 federal financial assistance. *See Id*. at 465.  Ultimately, the Court found that the
21 organization's receipt of dues from schools who received federal financial assistance
22 was too attenuated and held that Title IX liability could not be extended to entities
23 who "merely benefit" from federal funding. *Id*. at 467-68, 470. Here, however,
24 Plaintiff has alleged that Valley Christian, *not the CIF*, is subject to Title IX by virtue
25 of its membership in the organization. This is the exact opposite of the factual
26 circumstances in *NCAA v. Smith*. Thus, Defendants' reliance on that decision is
27 misplaced.

28

Here, Plaintiff has sufficiently alleged that the CIF is a government run organization as it is organized and operated exclusively under the California State Department of Education. (FAC ¶¶ 47-48). Member schools of the CIF, which include both private and public high schools, are mandated to abide by the terms and conditions of the Constitution, Bylaws, and policies of the CIF. (FAC ¶¶ 52-63). Furthermore, the CIF has controlling authority over the operation of the sports teams and players who are enrolled at member schools. (*Id*.). Additionally, the CIF grants scholarships to students, coaches, and member schools to use for, upon information and belief, athletic and educational purposes. (*See* Stark Decl[3]., Ex. D). Upon information and belief, such monetary assistance and grants to students, coaches, and schools are available to, and have been granted to, members of Valley Christian. (*Id*.). Moreover, there is evidence in the CIF's rules themselves that provide a student can bring a complaint against member schools for violations of Title IX in venues other than the CIF. (*See* Stark Decl., Ex. B).

The Court should find that Plaintiff has pled sufficient facts to hold that Valley Christian's voluntary membership in the CIF subjects it to liability under Title IX. First, Plaintiff has alleged that Valley Christian is a member school of the CIF and, as such, knowingly agreed to comply with Title IX. (FAC ¶¶ 52-63). Moreover, Plaintiff has demonstrated that the CIF, a state government operated entity, provides assistance to students, coaches, and schools in the form of scholarships and award money for educational purposes. (*Id*. ¶ 47-48; Stark Decl., Ex. D). It is well-settled that federal financial assistance constitutes more than just money paid directly to, and spent by, a school itself. *See Grove City Coll. v. Bell*, 465 U.S. 555, 563-70 (1984). Indeed, under *Grove City Coll. v. Bell*, funds paid directly to students, such as scholarships, from government entities for use in their school enrollment is sufficient to hold the receiving students' schools subject to Title IX. *See Radcliff v. Landau*, 883 F.2d 1481,

---

[3] The Declaration of Susan Stark in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss the First Amended Complaint and in Support of Plaintiff's Request for Judicial Notice shall be cited herein as ("Stark Decl.").

1483 (9th Cir. 1989). Accordingly, since the CIF provides scholarships and monetary awards to member students, coaches, and schools, including, upon information and belief, Valley Christian, Defendants membership in the CIF constitutes receipt of government financial assistance.

Based on the foregoing, Defendants' argument should be rejected.

### 3. Plaintiff Was Not Required to be a Student of Valley Christian in Order to be Protected from Discrimination Perpetrated by Defendants' Agents While on Valley Christian's Premises

Defendants argue that Plaintiff is not within the "zone of interests", meaning she is not an individual whom Title IX is meant to protect, because she was not a student of Valley Christian when Defendants took their discriminatory actions towards her. Defendants' argument should be rejected.

Title IX provides, in relevant part, that "*[n]o person* in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination *under any education program or activity* receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphasis added). To bring a claim under Title IX, a litigant must have statutory standing, that is, the plaintiff must "fall within the class of plaintiffs whom Congress has authorized to sue" and therefore fall into the statute's "zone of interests protected by the law invoked." *Conviser v. DePaul Univ.*, 532 F. Supp. 3d 581, 588 (N.D. Ill. 2021) (citing *Lexmark Int'l Inc. v. Static Control Components, Inc.* 572, U.S. 118, 126-28 (2014)).

The "zone of interests" test is to be "construed generously" and is "not meant to be demanding." *City of Sausalito v. O'Neill*, 38 F.3d 1186, 1200 (9th Cir. 2004). Accordingly, "a court should deny standing under the 'zone of interest' test *only* 'if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Id*, at 1200. (*quoting Clarke v. Secs. Indus. Ass'n*, 479 U.S. 388, 399

(1987)) (emphasis added).

Defendants contend that Title IX's "zone of interests" consists of only three categories of litigants: (i) those seeking admission to an institution; (ii) admitted students seeking to use available services and resources at an institution; and (iii) those employed by an institution. *See* Def. Memo. at Point(B)(2) (citing *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 526-27 (1982)). However, courts have made clear, following Title IX precedent, that Title IX extends statutory standing to "(i) employees of an educational program or activity, [] and (ii) those who are denied access to an 'educational program or activity.'" *Conviser v. DePaul Univ.*, 532 F. Supp. 3d at 592 (relying on the holdings in *Rossley v. Drake Univ.*, 336 F. Supp. 3d 959 (S.D. Iowa 2018) and *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005)).

The second basis for standing under Title IX does not require a plaintiff to be a student of the offending institution. However, a plaintiff in a Title IX action must do more than "simply assert that a federally-funded educational program discriminated against [her]." *Conviser v. DePaul Univ.*, at 593. Rather, the plaintiff must plead that the defendant "provided educational programs or activities [and] that the plaintiff was denied access to or participation in those programs or activities." *Id*.

Here, Plaintiff has sufficiently pled facts to show she is a litigant within Title IX's "zone of interests." First, Plaintiff has pled that Valley Christian is an entity that provided educational programs or activities, a fact that Defendants do not (and Plaintiff submits, could not) contest. (FAC ¶¶ 22-23). Second, Plaintiff has alleged that, as a result of Defendants' discriminatory actions towards her, Plaintiff was denied participation in high school football sports games against Valley Christian, which not only barred Plaintiff access to equal use of Valley Christian's premises and educational activities, but also affected her at her own school, Cuyama HS. (FAC ¶ 98).

Based on the foregoing, Plaintiff has sufficiently pled that she was discriminated against by an institution that provides educational programs or activities

13

(Valley Christian) and was denied access to or participation in those educational programs or activities, namely interscholastic football. Accordingly, Plaintiff falls within Title IX's zone of interests and Defendants' argument should be rejected.

### 4.     Plaintiff's Claims Are Not Barred by any Title IX Exception

### a.     The Contact Sports Exception Is Inapplicable

The federal regulations regarding Title IX provide, in relevant part, that "[n]o person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in any interscholastic, intercollegiate, club or intramural athletics." 34 C.F.R. § 106.41(a). Pursuant to Title IX's regulations, "[a] recipient [of federal financial assistance] shall provide equal athletic opportunity for members of both sexes." *Id*. at 106.41(c). Notwithstanding the foregoing, the regulations further maintain that a school may maintain single-sex athletic teams if the sport in question is a "contact sport" which includes, among others, football. *Id*. at § 106.41(b).

Defendants argue that Title IX is inapplicable to Plaintiff's claims in the instant matter because football is a contact sport and, thus, Title IX allows discrimination against Plaintiff on the basis of her sex. While Defendants cite a litany of cases explaining the substance of the contact sports exception, Defendants notably fail to provide any precedent related to the application of the exception under facts similar to the instant matter.

Admittedly, the case law regarding the contact sports exception as it relates to a non-student victim is scarce. However, Plaintiff submits that an analogous case can be found in *Mercer v. Duke Univ.*, 190 F. 3d 643, 644 (4th Cir. 1999). In *Mercer*, the female plaintiff was selected to join Duke University's then all-male football team as a kicker. *Id.* at 644-45. After joining the otherwise all male team, the female plaintiff experienced numerous instances of sex discrimination and was eventually dropped from the team. *Id.* at 645. The plaintiff in *Mercer* then filed suit and Duke University

14

argued for dismissal of the action based upon Title IX's contact sports exception. *Id.*

In determining whether the contact sports exception applied, the Fourth Circuit opined that the language of the exception "does not purport in any way to state an exemption, whether for contact sports or for any other subcategory, from the general anti-discrimination rule stated in [34 C.F.R. § 106.41(a)]." *Id.* at 647. Rather, the Fourth Circuit found that the exception merely stood for the proposition that an institution is not required to allow members of an excluded sex to try out for single-sex contact sports teams. *Id.* The Court further found that "[o]nce an institution has allowed a member of one sex to try out for a team operated by the institution for the other sex in a contact sport, [the contact sport exception] is simply no longer applicable, and the institution is subject to the [anti-discrimination clause of Title IX]." *Id.* at 647-48. Finally, the Court held that the contact sport exception did not apply because Plaintiff had already been permitted to try out and join Duke University's team and was therefore protected from discrimination under Title IX. *Id.* at 648.

Courts have interpreted the holding in *Mercer* to stand for the legal proposition that the contact sport exception to Title IX "does not permit a school to discriminate against women that [have been] allowed to participate in contact sports." *Hurd v. Cardinal Logistics Mgmt. Corp.*, 2019 WL 6718111, at *8 (W.D. Va. Dec. 10, 2019) *aff'd* 829 Fed. Appx. 620 (4th Cir. 2020).

Although not factually identical, the facts surrounding Plaintiff's claims in this matter are analogous to the facts underlying the holding in *Mercer*. Here, Plaintiff was granted the opportunity to play on Cuyama HS's football team, proved her abilities and qualifications, and was rostered on the team. (FAC ¶¶ 68-70, 73). At such point, the general anti-discrimination protections of Title IX applied to Plaintiff. *Mercer v. Duke Univ.*, 190 F. 3d at 647. Under the analysis and holding in *Mercer*, at the moment Plaintiff became a member of Cuyama HS's football team, Defendants were obligated to treat her as equal to her male teammates, the same way they would have

1   had to treat her if she had been a member on Valley Christian's team.

2          Based on the foregoing, Defendants cannot rely on the contact sport exception

3   to escape liability for discriminating against Plaintiff after she became a rostered

4   member of Cuyama HS's football team and Defendants' argument that they were "all

5   the more entitled" to discriminate against Plaintiff on the basis of her sex should be

6   rejected.

7                    **b.      Plaintiff Has Sufficiently Pled that Subjecting Valley**
                             **Christian to Liability Under Title IX Would Not Run**
8                            **Afoul of Valley Christian's Alleged Religious Tenets**

9          Defendants lastly argue that Title IX does not apply based on the statute's

10  religious organization exemption. Under that exemption, the antidiscrimination

11  mandates of Title IX do not apply "to an educational institution which is controlled

12  by a religious organization if the application of [the statute] would not be consistent

13  with the religious tenets of such organization". 20 U.S.C. § 1681(a)(3).

14         Here, Defendants argue that the discriminatory actions taken against Plaintiff

15  were committed in furtherance of Defendants' legitimate religious beliefs. However,

16  Plaintiff has alleged that Defendants purported religious beliefs are nothing more than

17  a pretext for their intentionally discriminatory actions against Plaintiff. (FAC ¶¶ 101-

18  105).

19         First, Plaintiff has alleged that there are numerous other Christian schools who,

20  like Defendants, purport to be led by their faith and Christian convictions. (*Id.*; Stark

21  Decl., Ex. C). Plaintiff has further alleged that such other Christian institutions

22  voluntarily and without incident allowed their male football players to play against

23  Plaintiff as a member of Cuyama HS's football team. (*Id.*). Thus, Plaintiff has

24  sufficiently alleged that Defendants' assertion that contact between male and female

25  athletes is barred under Christian convictions is false.

26         Furthermore, publicly available information indicates that Valley Christian

27  does not, in practice or reality, conform to its alleged religious conviction that boys

28  and girls should not come into contact with one another. Indeed, pursuant to the record

of games maintained on Maxpreps.com, a website which tracks the schedule, results, and rosters of high school athletic teams, including Cuyama HS and Valley Christian (*See* FAC ¶ 72), Valley Christian's boys basketball team played a league sponsored basketball game against Cuyama HS's varsity basketball team on or about January 4, 2022. (Stark Decl., Ex. E). Notably, a member of Cuyama HS's boys' basketball team that played that game is Brisa Lopez, who is upon information and belief, a female. (Id.). Apparently, Valley Christian, despite its alleged unbending religious conviction that boys and girls should not have physical contact with one another, was not opposed to allowing its male basketball players play a different contact sport against a female athlete during a league sponsored, regular season game.

Based on Valley Christian's own actions, Title IX's religious organization exemption does not apply because application of the statute in this case would mandate that Valley Christian do what it has already proved it can and will do – allow male and female athletes to play on the same field against each other.

Accordingly, Plaintiff has sufficiently pled that Valley Christian's purported convictions are a mere pretext and the religious organization exemption should not apply. *See Goodman v. Archbishop Curley High Sch., Inc.*, 149 F.Supp.3d 577, 586 (D. Md. 2016) (collecting cases and holding the religious organization exemption did not bar a retaliation claim where plaintiff alleged that defendant's purported religious justification for plaintiff's termination was pretext); *Demarco v. Holly Cross High Sch.*, 4 F.3d 166, 170 (2d Cir. 1993) ("[I]n those cases where a defendant proffers a religious purpose for its allegedly discriminatory employment action, a plaintiff will usually be able to challenge as pretextual the employer's justification…").

## B. <u>Plaintiff Has Sufficiently Stated a Claim Under California Education Code § 220</u>

Defendants' assertion that Plaintiff's Cal. Educ. Code § 220 claim fails because she cannot state a claim under Title IX is unavailing. As Defendants acknowledge,

the Court applies the same analysis and standard to Plaintiff's Cal. Educ. Code § 220 claim as it does to Plaintiff's Title IX claim. *See* Cal. Educ. Code § 201(g). Accordingly, for the reasons stated in Points IV(A)(1)-(4), *supra*, Defendants' arguments seeking dismissal of Plaintiff's Cal. Educ. Code § 220 claim should be rejected.

Additionally, contrary to Defendants' assertions, Plaintiff has specifically pled that Valley Christian is a recipient of *state* funding.  The FAC specifically alleges that "Valley Christian . . .operates under the auspices and direction of Defendant First Baptist. . .[*which*] . . .derives financial assistance and/or receives a financial benefit from *both* the State of California and the United States government." (FAC ¶¶ 22, 32).  These allegations are sufficient to state a claim under Cal. Educ. Code § 220. *See Videckis v. Pepperdine Univ.,* 100 F. Supp. 3d 927, 935 (C.D. Cal. 2015).

Defendants circumvent the issue regarding tax exempt status as not qualifying for state funding and cite to irrelevant, inapplicable authority dealing with another state statute having nothing to do with California's companion statute to Title IX. The arguments cited *supra* regarding the tax-exempt status as constituting federal assistance, are applicable here as the cases discussed address the issue under Title IX.

Plaintiff has also pled that Defendants may be subject to liability under Cal. Educ. Code § 220 by virtue of their voluntary membership in the CIF. As a member of the CIF, Defendants represented that "as a condition of membership and continuing membership, [Valley Christian] agree[d] . . . to abide by all current rules and regulations of the CIF State and CIF Section" and in doing so they acknowledged their obligation to be bound by applicable [California] laws and statutes prohibiting discriminatory conduct or practices in its athletic programs and related activities.  FAC ¶¶ 53, 57-59. Specifically, as a condition of membership in the CIF, Valley Christian committed to have "[k]nowledge of and *adherence to statewide rules and regulations*, including but not necessarily limited to, . . . gender equity and

discrimination." Further, the CIF authorizes an individual to bring a complaint against a member school for any violation related to sports equity without resort to exhaustion or utilizing CIF's internal grievance procedure. (*See* Stark decl., Ex. B at pp. 4, 87). All CIF-member schools are accountable to the CIF and appropriate governing bodies for violations of prohibited conduct. (*Id.*).

## C.   <u>The Unruh Civil Rights Act Applies to All Defendants[4]</u>

California Supreme court decisions interpreting the Unruh Act (the "Act") have emphasized that the term "business establishments" must be interpreted in the "broadest sense reasonably possible." *Curran v. Mt. Diablo Council of the Boy Scouts,* 17 Cal. 4th 670, 697-698 (1998). This is consistent with the legislative purpose of the Act which is "to create and preserve a nondiscriminatory environment in California business establishments by banishing or eradicating arbitrary invidious discrimination by such establishments." *Flowers v. Prasad*, 238 Cal. App. 4th 930, 937 (2015). The Legislature's inclusion of the words "all" and "of every kind whatsoever" in referring to business establishments covered by the Act, without any exception and without specification of particular kinds of enterprises, leaves no doubt that the term "business establishments" was meant to be interpreted and used in the broadest sense reasonably possible. *O'Connor v. Village Green Owners Assn.* 33 Cal.3d 790, 795 (1983) (internal citations omitted). *See also*, *Smith v. BP Lubricants USA, Inc.*, 64 Cal. App. 5th 138, 151 (2021).

Relying on *Doe v. California Lutheran High Sch. Ass'n,* 170 Cal. App. 4th 828 (2009) ("*California Lutheran*"), Defendants argue that Valley Christian and First Baptist are not "business establishments" under the Act because "the inculcation of a

---

[4] Plaintiff's FAC pleads a claim for violation of the Unruh Civil Rights Act against Valley Christian and First Baptist. As noted in Point V, *infra*, Plaintiff requests leave to amend to state a claim against Mikkelson.

specific set of values . . .to which the school subscribes" prevents Valley Christian from being considered a business establishment". *Id* at 838-41. However, Defendants' reliance on *California Lutheran* is misplaced as it is easily factually distinguishable from the instant matter.

In *California Lutheran*, the Court found that the Act did not prohibit a private religious high school's decision to expel two students for having a lesbian relationship because *the school's admissions policies* were based on the inculcation of values which prohibited such relations. *Id.* at 838. However, in *this* case, Plaintiff was not a student of Valley Christian and, therefore, the ruling in *California Lutheran* in inapplicable and Defendants' interactions with her are subject to a different analysis and standard.

Indeed, while an organization may, under certain circumstances, not be considered a business establishment with respect to its own membership decisions, the same organization may still be deemed a "business establishment" under the Act with respect to its transactions with nonmembers. *See Curran v. Mt. Diablo Council of the Boy Scouts*, 17 Cal. 4th at 697 ("*Curran v. Boy Scouts*"). In *Curran v. Boy Scouts*, the California Supreme Court recognized that the defendant was an "organization whose primary function is the inculcation of values in its youth members" and therefore held that "with regard to its ***membership decisions***, [the Boy Scouts] is not a business establishment within the meaning of the Unruh Civil Rights Act." *Id.* at 696, 700. However, the Court further held that the Act would still "apply to, and would prohibit discrimination in, [the Boy Scouts'] actual business transactions with nonmembers…" *Id*. at 700. The analysis in *Curran v. Boy Scouts* is applicable here. Indeed, the court in *California Lutheran* re-iterated this point as it relates directly to enforcement of the Act against private religious schools. *See California Lutheran*, at 839-840 (noting the narrow scope of the decision and finding that a private religious school "could be a business, and hence be prohibited from discriminating, with respect to its nonmember transactions, yet *not* be a business, and

hence *not* be prohibited from discriminating, with respect to its membership decisions.") (emphasis in original).

Defendants can be held liable for their discriminatory actions towards Plaintiff, a non-student, under the Act. In determining whether a private organization is covered by the Unruh Act, courts look at whether the organization otherwise functions like a traditional place of public accommodation or amusement for recreational purposes. *See Isbister v. Boys' Club of Santa Cruz, Inc.,* 40 Cal. 3d 72, 78-84 (1985) (holding that a private charitable club was a "business establishment" under the Act because the club was "plainly a place of amusement" and "classically public in its operation" because it opened its recreational doors to the entire youthful population of Santa Cruz).

Here, Valley Christian voluntarily chose to become a member of the CIF, and its membership application was made "at a public meeting of the local [public] school board or board of directors." *See* Stark Decl., Ex. B at p. 4. As a result, Defendants opened their premises to the public to, among other things, view games for various high school sports, including football. In doing so, they intentionally chose to make their sports fields and athletic facilities open, available and accessible to students at all participant CIF member schools. Defendants' transactions with those members of the public who are not otherwise students or members of Valley Christian, such as Plaintiff, is subject to the Act and Defendants cannot discriminate against its nonmembers without running afoul of the Act. Defendants' decision to bar Plaintiff, a nonstudent of Valley Christian, from Defendants' shared premises is in no way related to Defendants' admissions decisions but was, rather, an intentional decision by Defendants to discriminate against a nonstudent/nonmember on the basis of that nonmember's sex. Accordingly, the Act does apply to Defendants in this instance and Defendants' arguments should be rejected.

**V.    PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND TO ADD MIKKELSON TO PLAINTIFF'S THIRD CLAIM FOR RELIEF AND, IF NECESSARY, TO PRESERVE ANY CLAIM**

Ordinarily "leave to amend a complaint should be granted with great liberality." *See Deutsche Bank Nat'l Tr. Co as Tr. for Am. Home Mtge. Inv. Tr. 2007-2 v. Fid. Nat'l Tit. Ins.Co.*, 2021 WL 5002215, at *2 (9th Cir. Oct. 28, 2021) (*citing Desertrain v. City of Los Angeles*, 754 F.3d 147, 1154 (9th Cir. 2014). If the court grants a motion to dismiss, then the court "should grant leave to amend even if no request to amend the pleadings was made…" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016). Indeed, "[d]ismissal without leave to amend is improper unless it is clear [] that the complaint could not be saved by any amendment." *Rand v. Midland Nat'l Life Ins.*, 857 F. Appx. 343, 345 (9th Cir. 2021) (*quoting Mueller v. Auker*, 700 F.3d 1180, 1191 (9th Cir. 2012)).

Here, should the Court determine if any claim alleged in Plaintiff's FAC is subject to dismissal, Plaintiff should be granted leave to amend to allege any further facts and/or to fix any deficiencies in her pleadings, including, but not limited to, adding Mikkelson as a defendant to Plaintiff's Third Claim for Relief under the Unruh Civil Rights Act. *See Stevens v. Optimum Health Institute–San Diego*, 810 F. Supp. 1074, 1085 (2011).

**VI.   CONCLUSION**

Based on the foregoing, Plaintiff respectfully submits that Defendants' Motion to Dismiss the First Amended Complaint should be denied in its entirety. In the alternative, Plaintiff respectfully requests that she be granted leave to amend to cure any deficiencies in her pleadings.

Dated: January 28, 2022

Respectfully Submitted,

NESENOFF & MILTENBERG, LLP.

By: /s/ Susan Stark
     Susan Stark, Esq.
     Andrew T. Miltenberg, Esq.
     *(admitted pro hac vice)*
     Stuart Bernstein, Esq.
     *(admitted pro hac vice)*
     Gabrielle M. Vinci, Esq.
     *(admitted pro hac vice)*

Attorneys for Plaintiff
-and-

PALAY HEFELFINGER, APC

By: /s/ Brian Hefelfinger
     Brian Hefelfinger, Esq.

Local Counsel for Plaintiff

23