O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

E.H., a minor by and through her guardian *ad litem* SONYA HERRERA,

                                    Plaintiff,

            v.

VALLEY CHRISTIAN ACADEMY, FIRST BAPTIST CHURCH, JOEL MIKKELSON, and DOES 1-30,

                                    Defendants.

Case No.: 2:21-cv-07574-MEMF (GJSx)

**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS [ECF NO. 44] AND GRANTING IN PART PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE [ECF NO. 48]**

        Before the Court are the Motion to Dismiss filed by Defendants Valley Christian Academy, First Baptist Church, and Joel Mikkelson as well as the Request for Judicial Notice filed by Plaintiff E.H.

        For the reasons stated herein, the Court GRANTS IN PART the Motion to Dismiss with leave to amend. With respect to the Request for Judicial Notice, the Court GRANTS the Request with respect to Exhibits A–B and DENIES the request with respect to Exhibits C–E. Plaintiff E.H. is ORDERED to file a Second Amended Complaint within 30 days of the date of this Order if she still desires to pursue any of the claims being dismissed with leave to amend.

## BACKGROUND

### I.   Factual Background[1]

Plaintiff E.H. ("E.H."), a student of Cuyama Valley High School ("Cuyama Valley"), tried out for the varsity football team at her school during the 2020-2021 academic year.[2] FAC ¶¶ 1, 69. She earned the position of wide receiver, and, as a result, became the only female on her school's roster for that year. *Id.* ¶¶ 69, 70.

On March 13, 2021, E.H. traveled with her team to Defendant Valley Christian Academy's ("Valley Christian") campus to play in a California Interscholastic Federation ("CIF")[3] scrimmage. *Id.* ¶ 77. E.H. played nearly the entire game as a wide receiver for Cuyama Valley "with no issue." *Id.* ¶ 78. E.H. had her helmet on for the entire game, but once she removed her helmet at the end of the game, Valley Christian's team, coaches, and parents, and Defendant Joel Mikkelson ("Mikkelson") realized that E.H. was female. *Id.* ¶¶ 79, 83. Upon seeing her gender, the observers, coaches, and administrators of Valley Christian "glared at [E.H.] while shaking their heads in disbelief." *Id.* ¶ 84. Following this "rebuke," E.H. felt "humiliated, embarrassed and shocked by the public display of unwelcomed reactions." *Id.* ¶ 86.

Approximately two days later, E.H. learned through her high school athletic department that Defendants First Baptist Church ("First Baptist") and Mikkelson had notified Cuyama Valley's superintendent that E.H. "was not welcome on Defendants Valley Christian's and First Baptist's shared premises to compete in a football game there again solely due to the fact that she was female." *Id.* ¶ 88. Valley Christian and Mikkelson further detailed their "decision to uproot their entire football schedule to avoid playing against Cuyama Valley and [E.H.]" to respect the "guiding principles of the Bible regarding the care of a woman," in a letter addressed to Cuyama Valley. *Id.* ¶¶ 89, 90 (quoting FAC, Exhibit A ("Valley Christian's Letter") ¶ 2). Valley Christian maintained

---

[1] All facts alleged herein are taken from Plaintiff E.H.'s First Amended Complaint. ECF No. 34 ("FAC").

[2] E.H. notes in her Opposition that she "is no longer a student at Cuyama [High School]. However, at all times relevant to this litigation, [E.H.] was a student at Cuyama [High School]." ECF No. 46 at 1 n.1. At the March 24 hearing, E.H.'s counsel confirmed that E.H. currently attends a different high school.

[3] CIF is responsible for the governance and oversight of high school sports in the State of California and is operated under California's State Department of Education. FAC ¶¶ 47–48.

that its decision should not be taken as "a policing of [Cuyama Valley's school] policies," but rather a statement of "[Valley Christian's] position and the result of that position." Valley Christian's Letter ¶ 4.

As a result of Valley Christian's actions, "not only was E.H. forbidden to participate in extracurricular sports at Defendant Valley Christian, she was also restricted from participating in those same activities at her own school if and when Defendant Valley Christian was the opponent." FAC ¶ 98. Following this ban, "[h]igh school sports' officials, including an official from Cuyama Valley, as representatives of the CIF, informed Defendants that their conduct in refusing to play a game with Cuyama Valley based on E.H.'s gender violated state and federal laws, the applicable provisions of the CIF, and other regulations governing interscholastic athletic participation." *Id.* ¶ 106. "Despite this, Defendants . . . refused to reconsider their discriminatory decision and have confirmed their commitment to exclude [E.H.] from football games at [] Valley Christian due entirely and only because of [E.H.'s] gender." *Id.* ¶ 107.

## II.   Procedural History

On September 22, 2021, E.H. filed this action against Valley Christian, First Baptist, and Joel Mikkelson (collectively, "Defendants") alleging three causes of action for: (1) violation of Title IV—Sex Discrimination and/or Hostile Environment, 20 U.S.C. §§ 1681 *et seq.*; (2) violation of California Education Code §§ 200 *et seq.*; and (3) violation of the Unruh Civil Rights Act, California Civil Code §§ 151 *et seq.* ECF No. 1. On November 29, 2021, Defendants filed a Motion to Dismiss. ECF No. 30. On December 20, 2021, E.H. subsequently filed a First Amended Complaint. ECF No. 34.

Defendants now petition the Court to dismiss the FAC. ECF No. 44 ("Motion" or "Mot."). The Motion was fully briefed on February 17, 2022. ECF No. 46 ("Opp'n"), ECF No. 53 ("Reply"). E.H. urges the Court to take judicial notice of Exhibits A–E in support of her Opposition. ECF No. 48 ("Request"). On February 17, 2022, Defendants filed their opposition to the Request. ECF No. 54. The Motion was heard on March 24, 2022. On June 21, 2022, E.H. filed a Notice of Subsequent Relevant Legal Authority. ECF No. 65 ("Supplemental Briefing").

/ / /

3

1

## REQUEST FOR JUDICIAL NOTICE

2   A court may take judicial notice of facts not subject to reasonable dispute where the facts

3 "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

4 readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID.

5 201(b). Under this standard, courts may take judicial notice of "*undisputed* matters of public record,"

6 but generally may not take judicial notice of "*disputed* facts stated in public records." *Lee v. City of*

7 *Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (emphasis in original), *overruled on other grounds*

8 *by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). The Court generally

9 may not consider any material beyond the pleadings in ruling on a motion to dismiss, with the

10 exception of "a writing referenced in a complaint but not explicitly incorporated therein if the

11 complaint relies on the document." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Under

12 the doctrine of incorporation by reference, the Court may consider not only documents attached to

13 the complaint, but also documents whose contents are alleged in the complaint, provided: (1) the

14 complaint "necessarily relies" on the documents or contents thereof; (2) the document's authenticity

15 is uncontested; (3) and the document's relevance is uncontested. *Coto Settlement v. Eisenberg*, 593

16 F.3d 1031, 1038 (9th Cir.2010).

17   E.H. submits—and asks the Court to take judicial notice of—five (5) exhibits in support of

18 her motion to dismiss:

19 (1) a true and correct copy of "Frequently Asked Questions Regarding Participation of Faith-
20   Based Organizations in the Paycheck Protection Program (PPP) and the Economic Injury
    Disaster Loan Program (EIDL)" guidance (the "FAQ Sheet") promulgated and published
21   by the U.S. Small Business Administration ("SBA") (ECF No. 47-1, Exhibit A);
 (2) a true and accurate copy of excerpts of the California Interscholastic Federation's
22   ("CIF's") Constitution and Bylaws (ECF No. 47-2, Exhibit B);
 (3) a true and accurate copy of the 2021-2022 schedule of football games played by Cuyama
23   Valley High School's 8-man football team available on an online database entitled,
    "MaxPreps" (ECF No. 47-3, Exhibit C);
24 (4) a true and accurate copy of the CIF's Awards and Scholarships (ECF No. 47-4, Exhibit
   D) available on an online database entitled, "MaxPreps"; and
25 (5) a true and accurate copy of the schedule of games and Cuyama Valley High School boys'
   varsity *basketball* team roster available on an online database entitled, "MaxPreps" (ECF
26   No. 47-5, Exhibit E).

27

28

1    Defendants do not object to the Court taking judicial notice of Exhibits A and B. ECF No. 54

2    at 1. Having considered that the exhibits are explicitly referred to in the FAC, the Court takes

3    judicial notice of Exhibits A and B. *See Swartz*, 476 F.3d at 763.

4    Defendants object, however, to E.H.'s request for judicial notice of Exhibits C–E. ECF No.

5    54 at 1. At the March 24 hearing, E.H.'s counsel argued that is enough for the FAC to refer to

6    "MaxPreps" in order for the Court to grant judicial notice of the MaxPreps website printouts in

7    Exhibits C–E. *See* FAC ¶ 72 ("Cuyama Valley's roster was also available online via MaxPreps, the

8    online source for high school sports where coaches, school administrators, and others can access

9    information about a high school team, its players, season record and more.") However, the Court

10   finds that while the FAC references the team *roster* available on the MaxPreps website, it does not

11   reference the game *schedules* that are the subject of Exhibits C and E and the *awards* and

12   *scholarships* that are the subject of Exhibit D. Since the FAC does not reference the contents of these

13   exhibits, E.H. has failed to demonstrate that she "necessarily relies" on these Exhibits to support her

14   allegations.[4] *Coto*, 593 F.3d at 1038.

15   Accordingly, the Court DENIES Defendants' Request to take judicial notice of the Exhibits

16   C–E.

17   **MOTION TO DISMISS**

18   **I.    Legal Standard**

19   Under Federal Rule of Civil Procedure Rule 12(b)(6), a party may file a motion to dismiss

20   for "failure to state a claim upon which relief can be granted." The purpose of Rule 12(b)(6) is to

21   "enable defendants to challenge the legal sufficiency of claims asserted in a complaint." *Rutman*

22   *Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). A district court properly

23   dismisses a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts to support a

---

[4] E.H.'s counsel also argued at the March 24, 2022 hearing that the Court should take judicial notice of Exhibit D, featuring CIF awards and scholarships, since CIF is a state entity. Because the Court denies the Request on the grounds that the FAC does not necessarily rely on Exhibit D, the Court need not address whether CIF is a state entity.

cognizable legal theory. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than "threadbare recitals of the elements of a cause of action." *Id.* "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

When evaluating a complaint under Rule 12(b)(6), the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex*, 824 F.3d at 1159; *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("We accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."). This tenet, however, is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## II.   Discussion

### A.   E.H. Lacks Standing to Seek Injunctive Relief

As a threshold issue, Defendants argue that because E.H. is no longer a student at Cuyama Valley, she no longer maintains standing to bring her claims. Mot. at 2–3. Since E.H. only informed the parties and the Court in her Opposition that she is no longer a student at Cuyama Valley, the Court provided the parties an opportunity to clarify this issue at the March 24 hearing. Opp'n at 1 n. 1. At the hearing, E.H.'s counsel confirmed that E.H. currently attends a different school, where E.H. continues to play football. The parties mutually understood that E.H.'s new school is not in the same league as Valley Christian such that the two schools would not expect to compete against each other. Despite this, E.H. maintained her request for injunctive relief on the grounds that even though Valley

1    Christian no longer has opportunity to exclude E.H. from playing, Valley Christian continues to

2    exclude other female football players.

3         In the Ninth Circuit, "[i]t is well-settled that once a student graduates, [s]he no longer has a

4    live case or controversy justifying declaratory and injunctive relief against a school's action or

5    policy." *Cole v. Oroville Union High School Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000); *see also*

6    *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 798 (9th Cir.1999). Because E.H. has left Cuyama

7    Valley and no longer has cause to play against Valley Christian, the potential exclusion of *other*

8    women is not enough to confer standing upon E.H.[5] As the claims pertain to E.H., she no longer has

9    standing for injunctive relief.

10        While the Court finds that E.H.'s status no longer supports a claim for injunctive relief, her

11   claims for damages survive. *See Cole*, 228 F.3d at 1099. Accordingly, the Court DISMISSES E.H.'s

12   claim for injunctive relief WITHOUT LEAVE TO AMEND and addresses the sufficiency of her

13   claims for damages below.

14        **B.  E.H. Has Failed to Sufficiently Plead Any Cause of Action Against Mikkelson**

15        Defendants seek dismissal of all causes of action alleged against Mikkelson. Defendants

16   argue although Mikkelson is listed as a defendant, "[E.H.] does not plead (much less state) any claim

17   against [him]." Mot. at 4. E.H. acknowledges this assertion in her Opposition and requests leave to

18   amend to state a claim for violation of the Unruh Civil Rights Act against Mikkelson. Opp'n at 19

19   n.4. At the March 24 hearing, Defendants' counsel stated that he does not have any grounds to object

20   to the request for amendment. Having considered Defendants' non-opposition, the Court GRANTS

21   Defendants' Motion to Dismiss as to Mikkelson with LEAVE TO AMEND.

22        **C.  E.H. Has Sufficiently Pleaded a Claim Under Title IX**

23        Title IX of the Education Amendments of 1972 prohibits discrimination on the basis of sex

24   by educational institutions receiving federal financial assistance. Section 901 of Title IX provides

25   with certain exceptions that "[n]o person in the United States shall, on the basis of sex, be excluded

26

27   [5] The March 24 hearing was the first time E.H. proffered any argument on behalf of other female players; the
     FAC and Opposition make no mention of any such claims. As such, the Court need not address the claim for
28   injunctive relief as it pertains to other female players.

from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

Defendants argue that E.H. fails to allege a violation of Title IX for the following reasons: (1) E.H. fails to allege facts showing that Valley Christian receives federal financial assistance; (2) E.H.'s claim falls outside of the zone of interests of Title IX; (3) E.H.'s claim is precluded by the "contact sports exception;" and (4) E.H.'s claim is precluded by the "religious organization exception." Mot. at 5–11.

         i.  <u>E.H. Has Sufficiently Pleaded that Valley Christian Is a Recipient of Federal Financial Assistance</u>

E.H. alleges that Valley Christian is subject to Title IX as it receives federal financial assistance in the form of a federal paycheck protection program loan (the "PPP loan") and tax-exempt status. FAC ¶ 29–32. Defendants argue that receiving the PPP loan and Valley Christian's tax-exempt status does not constitute "federal financial assistance." Mot. at 5; 20 U.S.C. § 1681(a).

Under 34 C.F.R. § 106.2(g), the Department of Education provides a definition of "federal financial assistance":

> Federal financial assistance means any of the following, when authorized or extended under a law administered by the Department:
>
> (1) A grant or loan of Federal financial assistance, including funds made available for:
>     (i) The acquisition, construction, renovation, restoration, or repair of a building or facility of any portion thereof; and
>     (ii) Scholarships, loans, grants, wages or other funds extended to any entity for payment to or on behalf of students admitted to that entity, or extended directly to such students for payment to that entity.
>
> (2) A grant of Federal real or personal property or any interest therein, including surplus property, and the proceeds of the sale or transfer of such property, if the Federal share of the fair market value of the property is not, upon such sale or transfer, properly accounted for to the Federal Government.
>
> (3) Provision of the services of Federal personnel.
>
> (4) Sale or lease of Federal property or any interest therein at nominal consideration, or consideration reduced for the purpose of assisting the recipient or in recognition of public interest to be served thereby, or permission to use Federal property or any interest therein without consideration.
>
> (5) Any other contract, agreement, or arrangement which has as one of its purposes the provision of assistance to any education program or activity, except a contract of insurance or guaranty.

Defendants assert that the PPP loan allegation is insufficient for two reasons: (1) federal financial assistance does not include a mere federal guaranty; and (2) nothing in the CARES Act or its legislative history suggests that Congress intended to subject PPP loan recipients to private causes of action under Title IX. Mot. at 6–7.

While the Court acknowledges that the regulations provide guidance on the types of funding that constitute federal financial assistance, the Title IX statute itself does not define the term. The statute provides:

> Each Federal department and agency which is empowered to extend Federal financial assistance to any education program or activity, by way of grant, loan, or contract other than a contract of insurance or guaranty, is authorized and directed to effectuate the provisions of section 1681of this title with respect to such program or activity by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance in connection with which the action is taken.

20 U.S.C.A § 1682.

At the March 24, 2022 hearing, Defendants' counsel agreed with the Court's assessment that §1682 does not provide a definition for federal financial assistance. Furthermore, Defendants' counsel agreed that § 1682 does not define a private right of action. Finally, Defendants' counsel agreed that the plain meaning of § 1682 is that it applies to federal agencies and—by including an express carveout for guarantees—in fact suggests that federal financial assistance *is* generally understood to include guarantees, such as the PPP loan at issue here.

Recent cases confirm this view. The Court recognizes that, given the recent enactment of this program, opinions on whether PPP loans amount to federal financial assistance under Title IX are scarce. In her Supplemental Briefing, E.H. cites to *Karanik, et al. v. Cape Fear Academy, et al.*, Case No. 7:21-cv-169-D (E.D.N.C. June 17, 2022), in which a district court in North Carolina held that "[a] PPP loan is 'federal financial assistance' subject to Title IX because it is '[a] grant or loan of Federal financial assistance.'" *Id.* (citing 34 C.F.R. § 106.2(g)(1). Moreover, numerous district courts have held that PPP loans constitute federal financial assistance under similar anti-

1   discrimination statutes such as, Title VI and Section 504 of the Rehabilitation Act.[6] *See* 42 U.S.C.A.

2   § 1981 *et seq.*; 29 U.S.C.A. § 701 *et seq.* While Defendants argue that Title IX applies only to

3   federal assistance *other than a guaranty*, both Title VI and Section 504 contain similar carveouts,

4   which courts have not held against plaintiffs at the motion to dismiss stage.[7] Based on precedent in

5   similar anti-discrimination suits, the Court finds that E.H. has sufficiently alleged Valley Christian's

6   receipt of federal financial assistance in the form of PPP loans.

7           In addition, E.H. alleges that Valley Christian's tax-exempt status is a form of federal

8   financial assistance that would subject the institution to Title IX. FAC ¶ 32. Defendants respond that

9   it is not "enough for [E.H.] to add that, as tax-exempt entities, First Baptist and Valley Christian

10  derive financial assistance … from … the United States government." Mot. at 8 (internal quotations

11  omitted). The Ninth Circuit has not yet addressed whether tax-exempt status confers "federal

12  financial assistance" under Title IX. The parties provide conflicting case law from other circuits in

13  support of their contentions. *See Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n,* 134 F. Supp. 2d

14  965, 972 (N.D. Ill. 2001) (holding that "tax exempt status, without more, is . . . insufficient to subject

15  it to the antidiscrimination requirements of Title IX"); *compare with McGlotten v. Connally*, 338 F.

16  Supp. 448, 461 (D.D.C. 1972) (finding tax exemption constitutes federal financial assistance in the

17  context of Title VI litigation); *Fulani v. League of Women Voters Educ. Fund*, 684 F. Supp. 1185,

18  1192 (S.D.N.Y. 1988) (concluding that defendant received "Federal financial assistance" within the

19  meaning of both Title VI and Title IX because it received both direct grants and tax-exempt status).

20

21  [6] *See Awah v. Mansfield Kaseman Health Clinic*, 2021 WL 6197415 (D. Md. Dec. 30, 2021) (denying motion
22  to dismiss Title VI claims against entity Defendant that received PPP loan); *Fernandez v. Bruno Northfleet,
    Inc.*, 2021 WL 4851378 (S.D. Fla. Oct 18, 2021) ("Any doubts as to whether the federal funding Defendant
23  received qualifies as 'federal financial assistance' for purposes of Rehabilitation Act coverage are better
    addressed after discovery, when the evidentiary record has been more fully developed. At the Motion to
24  Dismiss stage, however, Plaintiff has sufficiently alleged facts to support its Rehabilitation Act claim.";
    *Husbands v. Financial Management Solutions, LLC*, No. GJH-20-3618, 2021 WL 4339436, at *8 (D. Md.
25  Sept. 23, 2021) (finding allegations that a defendant was the recipient of federal financial assistance sufficient
    to state a claim for relief under the Rehabilitation Act despite defendant's urging that it only received funds in
26  the form of PPP loans disbursed under the CARES Act).

27  [7] Title VI, like Title IX, "excludes from coverage a federal 'contract of insurance or guaranty.'" *U.S. v. Baylor
    Univ. Med. Ctr.*, 736 F.2d 1039, 1048 (5th Cir. 1984) (quoting 42 U.S.C. § 2000d-1 and 42 U.S.C § 2000d-4).
28  Section 504 of the Rehabilitation Act similarly exempts "a contract of insurance or guaranty" from the
    definition of "Federal financial assistance" under the statute. *See* 45 C.F.R. § 1232.3(f).

Absent any controlling precedent nor "strong legislative history to the contrary," the Court finds that "the plain purpose of the statute is controlling. Here that purpose is clearly to eliminate discrimination in programs or activities benefitting from federal financial assistance. Distinctions as to the method of distribution of federal funds or their equivalent seem beside the point, as the regulations issued by the various agencies make apparent." *McGlotten*, 338 F. Supp. at 461. Accordingly, the Court holds that Valley Christian's tax-exempt status confers a federal financial benefit that obligates compliance with Title IX.

ii.   E.H.'s Claim Is Within the Zone of Interest for Title IX Claims

Defendants further argue E.H. has failed to state a claim under Title IX since the allegedly discriminatory conduct falls outside of the scope or, "zone of interest," of the statute. Defendants maintain that Title IX does not cover E.H.'s allegations against Defendants because "[E.H.] is a student at a different institution" than that of the Defendants. Mot. at 9. E.H. responds that as a general matter, the "'zone of interests' test is to be construed generously and is not meant to be demanding." Opp'n at 12 (citing *City of Sausalito v. O'Neill*, 38 F.3d 1186, 1200 (9th Cir. 2004).[8]

In determining whether E.H. may bring her Title IX claims, the Court must consider whether she "fall[s] within the class of plaintiffs whom Congress has authorized to sue." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014). Courts assess Congress' authorization using "traditional principles of statutory interpretation," asking not "whether in our judgment Congress should have authorized [the] suit, but whether Congress in fact did so." *Id.* at 128. A "zone of interests" analysis begins with the statute at issue. *Id.* at 130. The statute provides, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance," subject to certain exceptions. 20 U.S.C.A. § 1681(a).

---

[8] In her Opposition, E.H. argues that Defendants consented to be subject to liability under Title IX by virtue of joining the CIF. Opp'n at 10. At the March 24, 2022 hearing, E.H.'s counsel conceded that Valley Christian's obligations to CIF do not give rise to a private right of action under Title IX. The Court finds that Valley Christian's membership in CIF does not impact whether E.H.'s claim is within the zone of interests for Title IX claims.

Valley Christian relies heavily on the Supreme Court's decision *North Haven v. Bell* in support of the proposition that Title IX does not reach E.H.'s claims because "she is not facing discrimination in seeking admission 'to an institution' or 'within an institution.'" Mot. at 9. *North Haven* concerned a challenge by two school boards to Title IX regulations; the school boards contended that the regulations exceeded agency authority because Title IX was not meant to reach the *employment* practices of educational institutions.  *N. Haven v. Bd. of Ed. V. Bell*, 456 U.S. 512, 517 (1982).  In deciding this question—whether Title IX was intended to reach employment practices of educational institutions—the Court first looked to the text of the statute.  The Court determined that, "Although the statutory language . . . seems to favor inclusion of employees, nevertheless, because Title IX does not expressly include or exclude employees from its scope, we turn to the Act's legislative history for evidence as to whether Congress meant somehow to limit the expansive language of [Title IX]." *North Haven,* 456 U.S. at 522.

In considering the legislative history, the Supreme Court focused on the statement of the Senator who proposed the provisions that became Title IX. In a colloquy on the Senate floor that senator stated:

> As the Senator knows, we are dealing with three basically different types of discrimination here. We are dealing with discrimination in admission to an institution, discrimination of available services or studies *within an institution once students are admitted*, and discrimination in employment within an institution, as a member of a faculty or whatever.

*Id.* at 526 (emphasis added). The *North Haven* court acknowledged that "[a]lthough the statements of one legislator made during debate may not be controlling, *see, e.g., Chrysler Corp. v. Brown*, 441 U.S. 281, 311, 99 S.Ct. 1705, 1722, 60 L.Ed.2d 208 (1979), Senator Bayh's remarks, as those of the sponsor of the language ultimately enacted, are an authoritative guide to the statute's construction." *Id.* at 526–27. In *North Haven*, the Court relied on Senator Bayh's remarks in holding that employment discrimination comes within the prohibition of Title IX.

The Court finds that Valley Christian is incorrect that *North Haven* and Senator's Bayh's remarks are dispositive here, in large part because in its Motion, Valley Christian has mischaracterized E.H.'s claim to some degree. Valley Christian characterizes E.H.'s claim as follows: "Plaintiff alleges that she participates in the educational programs and activities at Cuyama

Valley (its football team), but not at Valley Christian." Mot. at 9. Based upon this characterization, Valley Christian asserts, "She therefore cannot sue Valley Christian." *Id.*

But E.H. is not attempting to sue Valley Christian based upon her participation in educational programs and activities at *Cuyama Valley*. To the contrary, she alleges that Valley Christian excluded her from participation in *Valley Christian's* educational programs and activities—namely *its* football games on *its* premises. She specifically alleges that "Defendants deprived Plaintiff of *educational opportunities* which are readily available to similarly situated males." FAC ¶ 9 (emphasis added). In describing the series of events that led to her lawsuit, she alleges that "*their [namely, Valley Christian's] conduct in refusing to play a game with Cuyama Valley* based on Plaintiff's gender violated state and federal laws." *Id.* ¶ 106 (emphasis added). In describing her Title IX claim, she alleges that the statute "prohibits discrimination based on sex in a school's 'education program or activity,' *which includes all the school's operations*." *Id.* ¶ 112 (emphasis added). And finally, the gravamen of her complaint appears to be that "Defendant Valley Christian intentionally discriminated against Plaintiff based on Plaintiff's gender *by deliberately refusing to allow Plaintiff to play football on Defendants' premises* because she is female." *Id.* ¶ 117 (emphasis added).

And Valley Christian has not pointed this Court to any authority holding or even suggesting that a non-student who is excluded from participation in an educational activity on a school's premises falls outside the zone of interests of the statute. The one case that Valley Christian points this Court to—*Doe v. Brown University*, 896 F.3d 127 (1st Cir. 2018)—actually appears to support E.H.'s position. In *Doe*, the plaintiff, a student at Providence College, alleged that she was sexually assaulted by three Brown University students who were members of Brown University's football team. *Id.* at 128–29. In her complaint, she alleged that part of the assault took place at a Brown University dormitory, and that Brown University Police participated in the investigation of the assault once she reported it. *Id.* She brought suit against Brown University seeking relief under Title IX, alleging that "Brown had violated Title IX when it acted with deliberate indifference after Doe's sexual assault by failing to provide her a prompt, equitable, and effective response and redress as Title IX requires [and that] Brown failed to enforce Title IX in the response to and redress of sex-

1  based violence about which it knew or should have known, thereby creating a hostile environment

2  prior to Doe's sexual assault." *Id.* at 129.

3       The First Circuit held that she failed to state a claim for relief under Title IX. In so doing, the

4  First Circuit relied on *North Haven*, finding that "[*North Haven*] implies that, in order for a person to

5  experience sex 'discrimination under an education program or activity,' that person must suffer

6  unjust or prejudicial treatment on the basis of sex *while participating, or at least attempting to*

7  *participate, in the funding recipient's education program or activity*." *Id.* at 131 (emphasis added).

8  What was dispositive for the court in *Doe* was that "her complaint did not allege that she participated

9  or even would have participated in any of Brown's educational programs or activities." *Id.* at 133.

10 Similarly, the court found that Doe did not allege how Brown University's conduct deprived Doe of

11 "access to educational opportunities or benefits provided *by Brown*." *Id.* at 133 (internal quotations

12 and edits omitted) (emphasis added).  As stated above, E.H.'s allegation is that Valley Christian

13 deprived her of educational opportunities or benefits provided by Valley Christian.

14       Perhaps recognizing that its opinion could be misread to support the view that a non-student

15 can never bring a claim under Title IX, the court in *Doe* clarified its determination on this issue, and

16 it is worth quoting that clarification at length:

17       We clarify, though, that a victim does not need to be an enrolled student at the
18       offending institution in order for a Title IX private right of action to exist. Members
         of the public regularly avail themselves of the services provided by educational
19       institutions receiving federal funding. For example, they regularly access university
         libraries, computer labs, and vocational resources and attend campus tours, public
20       lectures, sporting events, and other activities at covered institutions. In any of those
         instances, the members of the public are either taking part or trying to take part of a
21       funding recipient institution's educational program or activity.

22 *Id.* at 133. Unlike in the case before us, Doe failed to allege that she had availed herself of any of

23 Brown University's educational programs in the past or that she intended to do so in the future. She

24 did not plead that Brown University's alleged deliberate indifference to it prevented her from

25 accessing such resources at Brown.

26       As the *Doe* court noted, there is nothing to suggest that non-students who avail themselves of

27 services provided by educational institutions—even including attending sporting events—cannot

28 bring a claim under Title IX. It would clearly be absurd that a non-student who sought to or did

attend a sporting event could bring a claim under Title IX, but a non-student who sought to play a sport on the school's premises could not. As such, the Court finds that E.H.'s claim concerning her participation in games on Defendants' campus falls within the zone of interests under Title IX.

        iii.   The "Religious Organization Exception" to the Department of Education Title IX Statute Does Not Preclude E.H.'s Claim

Defendants argue that E.H.'s Title IX claim is also barred under Title IX's "religious organization exception," which provides: Title IX does "not apply to an educational institution which is controlled by a religious organization if the application of this subsection would not be consistent with the religious tenets of such organization." Mot. at 11–12; *see* 20 U.S.C. § 1681(a)(3). E.H. responds that "Defendants purported religious beliefs are nothing more than a pretext for their intentionally discriminatory actions against Plaintiff." Opp. at 16. In support of her claim that Defendants' discriminatory acts are on the basis of gender and not religious convictions, E.H. alleges the following:

(1) "Not only was Defendant Valley Christian's actions intentionally discriminatory against Plaintiff on the basis of her gender, upon information and belief, Defendant Valley Christian's assertion that to have their male football players compete against a female would be contrary to their religious convictions was also false." FAC ¶ 101; and

(2) "Upon information and belief, Defendant Valley Christian's refusal to allow Plaintiff to participate in interscholastic athletics (e.g., football games) was not rooted in its educational ministry with a conviction to faith, but in its intentional, egregious and discriminatory animus toward women and archaic notions about their physical attributes, abilities and competence." FAC ¶ 105.

Despite what Valley Christian may ultimately be able to prove, her complaint, taken as true, adequately alleges that Valley Christian's decision to ban E.H. from playing against its football team was not motivated by its religious tenets. If that is the case, and Valley Christian was instead motivated by its beliefs on gender, then E.H.'s Title IX claim is not precluded under the "religious exception."

Defendants rely upon *Maxon v. Fuller Theological Seminary*, 549 F. Supp. 3d 1116 (C.D. Cal. 2020), aff'd, No. 20-56156, 2021 WL 5882035 (9th Cir. Dec. 13, 2021) in support of applying the religious exception. In *Maxon*, two students at a seminary school were expelled for violating school policies against same-sex marriage and extramarital sexual activity. *Id.* at 1119. The school's Sexual Standards Policy provides:

Fuller Theological Seminary believes that sexual union must be reserved for marriage, which is the covenant between one man and one woman, and that sexual abstinence is required for the unmarried. The seminary believes premarital, extramarital, and homosexual forms of explicit sexual conduct to be inconsistent with the teaching of Scripture. Consequently, the seminary expects all members of its community – students, faculty, administrators/managers, staff, and trustees—to abstain from what it holds to be unbiblical sexual practices.

However, unlike in *Maxon*, Valley Christian's policy banning physical contact between members of the opposite sex does not provide an explicit link between the inappropriate conduct and Valley Christian's religious teachings. In banning unions between members of the same sex in *Maxon*, the school policy explained that "[t]he seminary believes premarital, extramarital, and homosexual forms of explicit sexual conduct *to be inconsistent with the teaching of Scripture*." *Maxon*, 549 F. Supp. 3d at 1119. In contrast, Valley Christian's code of conduct in its Parent-Student Handbook provides: "There is to be no physical contact between boys and girls at Valley Christian Academy." ECF 45-1 at 22. Valley Christian's policy does not address how the banned contact is inconsistent with its religious teachings. For this reason, it would be inappropriate to apply the religious exemption at this stage.

        iv.   The "Contact Sports Exception" to the Department of Education Title IX Regulations Governing Separate Sports Teams Does Not Preclude E.H.'s Claim

As Valley Christian points out, the Department of Education has promulgated regulations concerning the applicability of Title IX by school athletic programs. These regulations contain an exception for contact sports such as football, which reads in part:

> *Separate teams*. Notwithstanding the requirements of paragraph (a) of this section, a recipient may operate or sponsor separate teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport. However, *where a recipient operates or sponsors a team in a particular sport for members of one sex but operates or sponsors no such team for members of the other sex, and athletic opportunities for members of that sex have previously been limited, members of the excluded sex must be allowed to try-out for the team offered unless the sport involved is a contact sport.* For the purposes of this part, contact sports include boxing, wrestling, rugby, ice hockey, football, basketball and other sports the purpose or major activity of which involves bodily contact.

34 C.F.R. § 106.41 (emphasis added).[9]

---

[9] The Court acknowledges that this "contact sports exception," to the extent that it exists, is only found in the regulations and not within the Title IX statute.

16

1    Defendants argue that the "contact sports exception" precludes E.H. "from bringing Title IX

2    claims for being excluded from opposite-sex contact sports teams, such as . . . football." Mot. at 11.

3    In support of this, Defendants cite to a number of cases where courts have held that these regulations

4    expressly permit schools from excluding opposite-sex members from their own contact sports teams.

5    *See id.*

6    But notably, this regulation and these cases do not create a broad exception to Title IX for

7    contact sports. Indeed, neither the regulation nor these cases state, as Defendants allege, that "Title

8    IX does not apply to contact sports." To the contrary, Title IX clearly does apply to contact sports—

9    which Defendants' counsel conceded at the March 24 hearing. *See, e.g.*, *Austin v. Univ. of Oregon*,

10   925 F.3d 1133, 1138 (9th Cir. 2019) (Title IX claim brought by basketball players brought Title IX

11   claim against university following their expulsion); *Brown v. State*, 23 F.4th 1173 (9th Cir. 2022)

12   (Plaintiff brought Title IX claim against university after being harassed by football player).

13   The contact sports exception that the Defendants have identified is merely an exception to the

14   requirement—contained within the aforementioned regulation—that schools must permit a student to

15   try out for a sports team when the school does not offer a team for that student's sex. *See, e.g.*,

16   *Williams v. Sch. Dist.*, 998 F.2d 168, 172 (3d Cir.1993); *O'Connor v. Bd. of Educ.*, 645 F.2d 578,

17   582 (7th Cir. 1981). As E.H. points out, at least one appellate court has made this clear: the Fourth

18   Circuit in *Mercer v. Duke Univ.*, 190 F.3d 643 (4th Cir. 1999). There, the court was considering the

19   argument of a school that although they had permitted a woman to try out for and join their football

20   team, because these regulations exempted the school from Title IX, the school could not be held

21   liable for sex discrimination in its treatment of that woman.  The court held, "The second sentence of

22   subsection (b) does not purport in any way to state an exemption, whether for contact sports or for

23   any other subcategory, from the general anti-discrimination rule stated in subsection (a)." *Mercer*,

24   654 F.2d at 647.

25   This Court agrees with the analysis in *Mercer*. The contact sports exception simply does not

26   apply. At the hearing, Defendants conceded that the "contact sports exception" does not purport to

27   create a general exception to the applicability of Title IX in contact sports and instead, more

28   narrowly, provides that schools have a choice to allow members of the opposite sex to try-out for

1  contact sports teams. However, Defendants maintained that the "logic" of the "contact sports

2  exception" should apply to the instant case and provide Valley Christian the choice to play against a

3  team with a member of the opposite sex. The Court finds Defendants' logical extension argument

4  insufficient to support the application of the "contact sports exception" to the instant facts, absent

5  any factually-similar precedent. Accordingly, the Court finds that this exception does not preclude

6  E.H.'s Title IX claim.

7        In conclusion, E.H. sufficiently alleges that Title IX applies to Valley Christian, as a recipient

8  of federal financial assistance. Furthermore, E.H.'s claim falls within the zone of interests of Title IX

9  as the allegedly discriminatory conduct was inflicted by Valley Christian on its own campus. Finally,

10 the Court finds that the "contact sports exception" and "religious organization exception" do not

11 apply to the instant facts. For these reasons, the Court hereby DENIES Defendants' Motion to

12 Dismiss with regards to E.H.'s cause of action under Title IX.

13        **D. E.H. Has Sufficiently Pleaded a Violation of California Education Code Section 220**

14

15        Defendants seek dismissal of E.H.'s violation of California Education Code §§ 200 *et seq.* on

16 the same grounds as their Title IX challenge. Defendants argue that because the California

17 Legislature intended Section 220 and its accompanying provisions to be interpreted consistent with

18 Title IX, "[E.H.'s] claim under the California Education Code therefore fails for the same

19 reasons her Title IX claim fails." Mot. at 13. Specifically, Defendants assert that "[E.H.'s] allegation

20 that Valley Christian receives a state benefit in the form of tax-exempt status falls short for the same

21 reason that her mirror allegation falls short under Title IX." *Id.* E.H. concurs with Defendants to the

22 extent that the "Court applies the same analysis and standard to [her] Cal. Educ. Code § 220 claim as

23 it does to [her] Title IX claim," however, contrary to Defendants, E.H. asserts that she has pled facts

24 sufficient to support both. Opp'n at 17–18.

25        Section 201(g) of the California Education Code provides: "It is the intent of the Legislature

26 that this chapter shall be interpreted as consistent with . . . Title IX of the Education Amendments of

27 1972 (20 U.S.C. Sec. 1681, et seq.)." *See also Brennon B. v. Superior Ct. of Contra Costa Cty.*, 57

28 Cal. App. 5th 367, 394–95, (2020). The Court agrees with both parties that Section 201(g) shall be

interpreted consistent with Title IX such that the Court shall decide E.H.'s Section 220 claim consistent with her Title IX claim.

In her FAC, E.H. alleges that Valley Christian is a "tax exempt entit[y] and therefore derive[s] financial assistance and/or receive[s] a financial benefit from [] the State of California . . . ."[10] FAC ¶ 32. For the same reasons stated above in the Court's discussion on Valley Christian's federal tax-exempt status, *see supra* section II.C.i, the Court finds that Valley Christian receives a state benefit and hereby DENIES Defendants' Motion to Dismiss with regards to the California Education Code Section 220 claim.

### E.  E.H. Has Failed to Properly Plead Her Unruh Act Claim

Defendants seek dismissal of E.H.'s Unruh Act claim on the grounds that the claim "fails because First Baptist and Valley Christian are not 'business establishments.'" Mot. at 14. E.H. responds that because Valley Christian chose to become a member of the CIF and opened their premises to the public, they are therefore subject to liability under the Unruh Act. Opp'n at 21.

Defendants specifically cite to *Doe v. Cal. Lutheran High Sch. Ass'n*, 170 Cal. App. 4th 828 (2009), in which the California Court of Appeals held that a private religious school defendant "is not a business establishment within the meaning of the Unruh Act." *Id.* at 841. In *Cal Lutheran*, two students sued their high school, after being expelled for having a same-sex relationship in violation of the School's "Christian Conduct" rule. *Id.* at 830. The former students alleged that the school and its principal had discriminated against them based on sexual orientation, in violation of the Unruh Act. *Id.* The Court of Appeals held that the school's participation in business transactions did not render it a "business establishment" under the Act, since, ultimately, the school "is an expressive social organization whose primary function is the inculcation of values in its youth members." *Id.* at 838 (citing *Curran v. Mount Diablo Council of the Boy Scouts*, 17 Cal.4th 670, 699 (1998)).

---

[10] In her Opposition, E.H. argues that Valley Christian's voluntary membership in CIF subjects it to liability under Section 220. Opp'n at 18–19. At the March 24 hearing, E.H.'s counsel explained that because CIF is a state agency, the receipt of awards from CIF constitutes state financial assistance. While the Court takes note of these arguments, the Court finds no mention of these arguments in the FAC and does not consider them in its decision to DENY the Motion to Dismiss as it relates to the California Education Code § 220 claim.

E.H. distinguishes *Cal Lutheran* by arguing that unlike the two plaintiffs who were students at defendant's school, E.H. was and is not a student at Valley Christian, and defendants may therefore be held liable for its conduct towards a non-student. Opp'n at 20–21. However, E.H. fails to cite to any case law indicating that if an establishment opens itself up to the public, it is necessarily a "business establishment" under the Unruh Act. The case that E.H. cites to, *Curran*, 17 Cal. 4th at 700, holds that the Unruh Act would apply only in "the actual business transactions with nonmembers." The *Curran* Court found—contrary to E.H.'s argument—"that such transactions do not render the [organization] a business establishment so as to bring its membership policies or decisions within the reach of the Unruh Civil Rights Act." *Id.* As such, this Court finds that even if Valley Christian engages in business transactions with the public, the Unruh Act only prohibits discrimination within the context of those transactions. Those transactions, however, do not render Valley Christian a business establishment so as to bring its student policies—such as banning contact between boys and girls—within the reach of the Unruh Act.

The Court also considers E.H.'s own description of Valley Christian as outlined in the FAC. E.H. alleges that "First Baptist's educational mission as reflected on its website is to encourage students to develop a heart for God and a biblical worldview, preparing them to positively impact their families, churches and country for Christ." FAC ¶ 20 (internal quotations omitted). E.H. describes Valley Christian as a "private, religious pre-K through 12th grade school," which "operates and exists, as promulgated in its Parent/Student Handbook (the Handbook'), in accordance with the teachings of Scripture." *Id.* ¶¶ 22, 24 (internal quotations omitted). Based on E.H.'s own allegations, the Court finds Valley Christian and First Baptist to be "expressive social organization[s] whose primary function is the inculcation of values in its youth members" that do not fall within the scope of the Unruh Act. *Cal. Lutheran High Sch. Ass'n*, 170 Cal. App. 4th at 838.

For the foregoing reasons, the Court hereby GRANTS Defendants' Motion to Dismiss with as it relates to the Unruh Act claim with LEAVE TO AMEND.

### III.    Conclusion

For the reasons stated herein, the Court GRANTS the Motion to Dismiss WITH LEAVE TO AMEND as it relates to Defendant Joel Mikkelson; DENIES the Motion as it relates to the Title IX

claim for damages against Defendants Valley Christian and First Baptist Church; DENIES the Motion as it relates to the California Education Code § 220 claim for damages against Defendants Valley Christian and First Baptist Church; GRANTS the Motion WITH LEAVE TO AMEND as it relates to the Unruh Act claim against all Defendants; GRANTS the Request for Judicial Notice of Exhibits A–B; and DENIES the Request for Judicial Notice of Exhibits C–E.

Plaintiff E.H. is ORDERED to file a Second Amended Complaint within 30 days of the date of this Order if she still desires to pursue any of the claims being dismissed with leave to amend.

IT IS SO ORDERED.

Dated: July 25, 2022

_____
MAAME EWUSI-MENSAH FRIMPONG
United States District Judge